## EXHIBIT B

[Bidding Procedures Order]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Alternative Distribution Systems, Inc., *et al.*[1] | ) | Case No. 09-_____ ( ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER: (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (II) SCHEDULING A HEARING TO CONSIDER THE SALE OF ASSETS; (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (IV) APPROVING EXPENSE REIMBURSEMENT; AND (V) GRANTING RELATED RELIEF

Upon consideration of the motion of the above-captioned debtors (collectively, the "Debtors"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (this "Bidding Procedures Order"): (I) approving bidding procedures in connection with the sale of substantially all of the Debtors' assets; (II) scheduling a hearing to consider the sale of assets; (III) approving the form and manner of notice thereof; (IV) approving expense reimbursement; and (V) granting related relief (the "Motion")[2] *[Docket No. __]*; the Court having determined that the relief provided herein is in the best interest of the Debtors, their estates, their creditors and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of these

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alternative Distribution Systems, Inc. (2412); May Logistics Services, Inc. (4970); and ADS Logistics, LLC (0782).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:**[3]

      A.    This Court has jurisdiction over the Motion and the transactions contemplated by the Stalking Horse APA pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

      B.    Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

      C.    The Debtors' proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction (as defined in the Bidding Procedures), the sale of the Purchased Assets, and the Bidding Procedures to be employed in connection therewith.

      D.    The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, including: (i) the payment of the Expense Reimbursement, if necessary, to Buyer in accordance with the Stalking Horse APA; (ii) the scheduling of a bid deadline, auction and sale hearing for the sale of the Purchased Assets; and (iii) the establishment of procedures to fix the Cure Amounts to be paid under section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable. See Bankruptcy Rule 7052.

E.     The Stalking Horse APA and its terms were negotiated by the Debtors and Buyer in good faith and at arms-length.

F.     The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Purchased Assets.

G.     The Debtors have demonstrated that the Expense Reimbursement is an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, and of substantial benefit to the Debtors' estates by inducing the Buyer's bid, which has established a bid standard or minimum for other bidders for the Purchased Assets, thereby ensuring that during the Auction, if any, the Debtors receive the highest or best bid possible for the Purchased Assets.

H.     The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is granted as set forth herein.

2.     All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.     The Bidding Procedures, in substantially the form attached hereto as Schedule 1, are hereby incorporated herein and approved, and shall apply with respect to the sale of the Purchased Assets. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4.     As further described in the Bidding Procedures, the deadline for submitting bids for the Purchased Assets (the "Bid Deadline") is [_____], 2009 at 12:00

3

noon (prevailing Eastern time). No bid shall be deemed to be a Qualified Bid (as defined in the Bidding Procedures) or otherwise considered for any purposes unless such bid meets the requirements set forth in the Bidding Procedures.

5.      The Debtors may sell the Purchased Assets by conducting an Auction in accordance with the Bidding Procedures. If Qualified Bids are timely received by the Debtors in accordance with the Bidding Procedures, the Auction shall take place on [_____], 2009 at 10:00 a.m. (prevailing Eastern Time) at the offices of Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, or such other place and time as the Debtors shall notify all Qualified Bidders, any statutory committee appointed in these cases, and other invitees. If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held and the Debtors shall promptly seek Bankruptcy Court approval of the Stalking Horse APA.

6.      Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

7.      The Auction will be conducted openly.

8.      Bidding at the Auction will be transcribed or videotaped.

9.      The Sale Hearing shall be held before this Court on _____, 2009 at _____ m. (prevailing Eastern Time), or as soon thereafter as counsel and interested parties may be heard.

10.     On or before three (3) business days after entry of this Bidding Procedures Order, the Debtors will cause: (A) the notice, substantially in the form attached hereto as Schedule 2 (the "Notice of Auction and Sale Hearing") and a copy of this Bidding Procedures Order to be sent by first-class mail postage prepaid, to the following: (i) the Office of the United

States Trustee; (ii) counsel for the Buyer; (iii) counsel for any statutory committee in these cases, if and when appointed; (iv); counsel to the administrative agent for the Debtors' prepetition First Lien Lenders; (v) counsel to the agent for the Debtors' postpetition secured lenders; (vi) counsel to the collateral agent for the Debtors' prepetition Second Lien Lenders; (vii) all taxing authorities and other governmental agencies having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (viii) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (ix) all Persons known or reasonably believed to have asserted any lien, claim, encumbrance, right of first refusal, or other Interest in or upon any of the Purchased Assets; (x) the non-Debtor parties to the Executory Contracts and Unexpired Leases and any parties who are known to claim interests therein; (xi) all Persons known or reasonably believed to have expressed an interest in acquiring all or substantially all of the Purchased Assets within the last six months; (xii) the Attorneys General in the States where the Purchased Assets are located; (xiii) the United States Environmental Protection Agency; and (xiv) any applicable state environmental agency; (B) the Notice of Auction and Sale Hearing to be served on all known creditors of the Debtors; and (C) the Notice of Auction and Sale Hearing to be published once in one or more publications the Debtors deem appropriate, including but not limited to The Wall Street Journal (national edition).

11.    On or before three (3) business days after the entry of the Bidding Procedures Order, the Debtors shall serve by first class mail or hand delivery, a notice of potential assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases (substantially in the form attached hereto as Schedule 3 the "Notice of Assumption and Assignment") on all non-debtor parties to the Executory Contracts and Unexpired Leases. The Notice of Assumption and Assignment shall identify the calculation of the cure amounts that the

Debtors believe must be paid to cure all prepetition defaults under the Executory Contracts and Unexpired Leases (the "Cure Amounts"). In addition, if the Debtors identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to Buyer not set forth in the original Notice of Assumption and Assignment, the Debtors shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

12. Unless the non-debtor party to an Executory Contract or Unexpired Lease files an objection (the "Cure Amount/Assignment Objection") to (a) its scheduled Cure Amount and/or (b) the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease by the later of (i) 4:00 p.m. (prevailing Eastern time) on the date that is three (3) business days prior to the Bid Deadline or (ii) ten (10) days after service of the applicable Supplemental Notice of Assumption and Assignment (such later date, the "Cure/Assignment Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline on the same day to: (a) Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attn: Norman L. Pernick, Esq.), co-counsel to the Debtors; (b) Proskauer Rose LLP, 70 West Madison, Suite 3800, Chicago, Illinois 60602 (Attn: Jeff J. Marwil, Esq. and Grayson T. Walter, Esq.), co-counsel to the Debtors; (c) Alternative Distribution Systems, Inc., 116 East 1100 North, Chesterton, Indiana 46304 (Attn: Timothy M. May); (d) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn: Richard Scheparcarter); (e) counsel to any statutory committee that may be appointed in these cases; (f) Sidley Austin LLP, 1 South Dearborn, Chicago, Illinois, 60603 (Attn: Larry Nyhan, Esq.), co-counsel to the agent for the Debtors' postpetition lenders; and

(g) Richards Layton & Finger, 920 North King Street, Wilmington, Delaware, 19801 (Attn: Mark Collins, Esq.), co-counsel to the agent for the Debtors' postpetition lenders; (collectively, the "Notice Parties"); then such non-debtor party (i) will be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract and Unexpired Lease and the Debtors shall be entitled to rely solely upon the Cure Amount, and (ii) if the Executory Contract or Unexpired Lease was identified as a Purchased Asset and the Buyer is the Successful Bidder, will be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease and will be forever barred and estopped from asserting or claiming against the Debtors, the Buyer or such other Successful Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease.

13.    If an objection challenges a Cure Amount, the objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof. Upon receipt of a Cure Amount/Assignment Objection, the Debtors are authorized, but not directed, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court. In the event that the Debtors and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection no later than three (3) business days prior to the Sale Hearing, the Court will resolve any such Cure Amount/Assignment Objection at the Sale Hearing.

14.     The Debtors, the Buyer or the other Successful Bidder, as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Purchased Assets no later than one (1) business day prior to the Sale Hearing, or, if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtors, no later than five (5) business days following such hearing.  The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

15.     In the event that the Buyer is not the Successful Bidder for the Purchased Assets and for those Executory Contracts and Unexpired Leases identified in the Notice of Assumption and Assignment, within two (2) business days after the conclusion of the Auction for the Purchased Assets, the Debtors will serve a notice identifying the Successful Bidder to the non-debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid.  The non-debtor parties to the Executory Contracts and Unexpired Leases will have until 4:00 p.m. on the date that is two (2) business days prior to the Sale Hearing (the "Adequate Assurance Objection Deadline") to object to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

16.     Objections to the sale of the Purchased Assets, or the relief requested in the Motion must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, on or before 4:00 p.m. (prevailing Eastern

Time) three (3) business days prior to the Sale Hearing, or such later date and time as the Debtors may agree; and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon the Notice Parties. All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

17. The Notice of Auction and Sale Hearing and the Notice of Assumption, and Assignment to be issued in connection with the proposed sales of the Purchased Assets, substantially in the forms annexed hereto as <u>Schedule 2</u> and <u>Schedule 3</u>, respectively, are approved.

18. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

19. The Expense Reimbursement as set forth in the Stalking Horse APA is approved. The obligations of Debtors to pay the Expense Reimbursement: (i) shall be entitled to administrative expense claim status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; (ii) shall not be subordinate to any other administrative expense claim against the Debtors (other than any super-priority claim granted under the Interim or Final DIP Order, any carve-out for professional fees and expenses included in the Interim or Final DIP Order, or any adequate protection order in existence as of the date hereof); and (iii) shall survive the termination of the Stalking Horse APA. If incurred pursuant to the Stalking Horse APA, the Debtors shall, without further notice to or order of this Court, pay such amount to the Buyer in cash in accordance with the provisions of the Stalking Horse APA, including, without limitation, that in the event the Debtors elect to sell the Purchased Assets to an Alternate Bidder other than the Buyer, the

Expense Reimbursement shall be paid out of the cash proceeds of the sale to such Alternate Bidder.

20.     Except as otherwise provided herein and in the Bidding Procedures, Local Rule 6004-1(c)(ii) is waived.

21.     Except as otherwise provided in the Stalking Horse APA or this Bidding Procedures Order, the Debtors further reserve the right as they may reasonably determine to be in the best interests of their estates, subject to conformity with the Bidding Procedures, to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) remove some of the Purchased Assets from the Auction; (vi) waive terms and conditions set forth herein with respect to all potential bidders; (vii) impose additional terms and conditions with respect to all potential bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (x) modify the Bidding Procedures as the Debtors may determine to be in the best interest of their estates or to withdraw the Motion at any time with or without prejudice.

22.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and Bidding Procedures Order shall be effective immediately upon its entry.

23.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

Dated: _____ \_\_\_, 2009
       Wilmington, Delaware

_____
    United States Bankruptcy Judge

# SCHEDULE 1

## To Bidding Procedures Order

[Bidding Procedures]

# BIDDING PROCEDURES

By motion dated September 2, 2009 (the "Motion"),[1] Alternative Distribution Systems, Inc. and certain of its affiliates (the "Debtors")[2] sought approval of, among other things, the procedures through which they will determine the highest or otherwise best price for the sale (collectively, the "Sale") of substantially all of their assets (the "Purchased Assets"), as described in the Asset Purchase Agreement by and between General Electric Capital Corporation, Global Leveraged Capital Credit Opportunity Fund I, and Regiment Capital Special Situations Fund III, L.P., or their assignee (the "Buyer") and the Debtors, dated as of September [__], 2009 (the "Stalking Horse APA"), a copy of which is attached to the Motion as Exhibit A.

On [_____], 2009, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to determine the highest or otherwise best bid for the Purchased Assets through the process and procedures set forth below (the "Bidding Procedures"). The Debtors reserve the right to waive the Bidding Procedures, to the extent set forth in the Motion.

The sale will be subject to competitive bidding as set forth herein and approval of the Court pursuant to sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

## Participation Requirements

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the Purchased Assets (a "Potential Bidder") must first deliver the following materials to the Debtors and their counsel:

    i.    An executed confidentiality agreement in form and substance satisfactory to the Debtors and their counsel;

    ii.    The most current audited and latest unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of a sale transaction, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors that demonstrates the Potential Bidder's financial ability to consummate a competing sale transaction and (y) a written commitment acceptable to the Debtors and their counsel of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with a sale transaction (including being bound by the terms and conditions of these Bidding Procedures); provided that if a Potential Bidder is unable to provide Financials, the Debtors may accept such other information

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alternative Distribution Systems, Inc. (2412); May Logistics Services, Inc. (4970); and ADS Logistics, LLC (0782).

sufficient to demonstrate to the Debtors' reasonable satisfaction that such Potential Bidder has the financial wherewithal to consummate a sale transaction. A Potential Bidder also must establish that it has the financial ability to consummate its proposed transaction within the timeframe contemplated for consummation of the Stalking Horse APA. A person meeting the requirements set forth in this paragraph shall be considered a "Qualified Bidder."

iii. The Debtors will promptly advise the Potential Bidder in writing of the Debtors' determination whether or not the Potential Bidder is a Qualified Bidder. For purposes of these Bidding Procedures, the Buyer is deemed a Qualified Bidder.

**Bid Requirements**

The Debtors shall determine whether a bid qualifies as a "Qualified Bid." To constitute a Qualified Bid, a bid (other than the Stalking Horse APA, which shall constitute a Qualified Bid) must be a written irrevocable offer from a Qualified Bidder and:

i. state that the Qualified Bidder offers to consummate the Sale pursuant to an agreement that is substantially similar to the Stalking Horse APA (or pursuant to an alternative structure that the Debtors determine is no less favorable to the Debtors than the terms and condition of the Stalking Horse APA) and has been marked to show amendments and modifications to the Stalking Horse APA, including price, assets to be purchased and terms, that are being proposed by the Qualified Bidder, as applicable, (the "Marked Purchase Agreement"). IF ANY BID IS CONDITIONED ON THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES, THEN SUCH POTENTIAL BIDDER SHALL BE REQUIRED TO PROVIDE EVIDENCE OF ITS ABILITY TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF SUCH CONTRACTS OR LEASES ALONG WITH THE BID;

ii. be an all-cash bid; provided that a bid need not be in cash for any amount in excess of the aggregate amount outstanding under the DIP Facility plus $21,000,000;

iii. equal or exceed the consideration being paid by the Buyer pursuant to the Stalking Horse APA by $700,000, which is the sum of $500,000 (the maximum amount of the Expense Reimbursement) and $200,000;

iv. contain a list of the Debtors' executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtors (which may include some or all of the contracts and leases included in the Stalking Horse APA and some or all of the excluded contracts and leases not included in the Stalking Horse APA);

2

v.     confirm that the offer shall remain open and irrevocable as provided below;

vi.     enclose a copy of the proposed Marked Purchase Agreement;

vii.     be accompanied with a certified or bank check or wire transfer in an amount equal to $1.5 million as a minimum good faith deposit (the "<u>Minimum Deposit</u>"), which Minimum Deposit shall be used to fund a portion of the purchase price provided for in the bid;

viii.     be on terms that are not materially more burdensome or conditional than the terms of the Stalking Horse APA;

ix.     not be conditioned on obtaining financing or the outcome of any due diligence by the Qualified Bidder;

x.     not request or entitle the Qualified Bidder to any break-up fee, expense reimbursement or similar type of payment; and

xi.     fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid, and the complete terms of any such participation.

A bid received from a Qualified Bidder and that meets the requirements set forth above will be considered a Qualified Bid if the Debtors believe that such bid would be consummated if selected as a Successful Bid (defined below).  Notwithstanding anything contained herein to the contrary, the Stalking Horse APA submitted by the Buyer shall be deemed a Qualified Bid, which shall remain open and irrevocable until the earlier of (i) closing of the Sale related to the Purchased Assets to the Successful Bidder (defined below) or (ii) the Outside Back-up Date (defined below).

After the Bid Deadline (defined below), the Debtors shall determine which Qualified Bid represents the then-highest or otherwise best bid (the "<u>Starting Qualified Bid</u>"). Prior to the commencement of the Auction, the Debtors shall distribute copies of the Starting Qualified Bid to each Qualified Bidder.

**Bid Deadline**

**The deadline for submitting bids on the Purchased Assets by a Potential Bidder shall be _____], 2009 at 12:00 noon (prevailing Eastern Time) (the "<u>Bid Deadline</u>").**

A Potential Bidder that desires to make a bid must deliver written copies of its bid so that they are actually received prior to the Bid Deadline by:  (i) Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attn: Norman L. Pernick, Esq.), co-counsel to the Debtors; (ii) Proskauer Rose LLP, 70 West Madison, Suite 3800, Chicago, Illinois 60602 (Attn:  Jeff J. Marwil, Esq. and Grayson T. Walter, Esq.), co-counsel to the Debtors; (iii) Alternative Distribution Systems, Inc., 116 East 1100

North, Chesterton, Indiana 46304 (Attn: Timothy M. May); and (iv) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn: Richard Scheparcarter).

After the Bid Deadline, each Qualified Bidder that submits a Qualified Bid will be provided with a copy of any other Qualified Bid(s).

**Obtaining Due Diligence Access**

The Debtors shall afford each Qualified Bidder reasonable due diligence information. Site access shall be provided upon reasonable request to the Debtors at the discretion of the Debtors within their reasonable business judgment. The due diligence period will end on the Bid Deadline.

The Debtors shall not be obligated to furnish any information relating to the Debtors, the Purchased Assets, and/or the Sale to any person except to a Qualified Bidder. The Debtors shall give each Qualified Bidder reasonable access to all written due diligence information provided to another Qualified Bidder.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

**Due Diligence From Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale. Failure by the Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a bid made by the Potential Bidder is not a Qualified Bid (as defined below).

**"As Is, Where Is"**

The Sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, its agents or estates, except to the extent set forth in the purchase agreement between the Debtors and the Successful Bidder. Except as otherwise provided in the Stalking Horse APA, all of the Debtors' right, title and interest in and to the Purchased Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests"), with such Interests to attach to the net proceeds of the Sale of the Purchased Assets, with the same validity and priority as existed immediately prior to such Sale.

Each bidder, other than the Buyer (whose acknowledgements and representations are contained in the Stalking Horse APA), shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Purchased Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements,

4

representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the Stalking Horse APA or Marked Purchase Agreement, as applicable.

**The Auction**

If a Qualified Bid by a Qualified Bidder is received by the Bid Deadline (other than the Stalking Horse APA), an auction (the "Auction") with respect to the sale of the Purchased Assets shall take place on [_____], 2009 at 10:00 a.m. (**prevailing Eastern Time**) at the offices of Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, or such other place and time as the Debtors shall notify all Qualified Bidders, any statutory committee appointed in these cases, and other invitees. If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held and the Debtors will promptly seek Bankruptcy Court approval of the Stalking Horse APA.

<u>Auction Rules</u>:

i.    Only a Qualified Bidder and its authorized representatives who have submitted a Qualified Bid will be eligible to participate at the Auction. At the Auction, only the Buyer and Qualified Bidders who have submitted a Qualified Bid will be permitted to increase their bids. The bidding at the Auction shall start at the purchase price stated in the highest or otherwise best Qualified Bid as disclosed to all Qualified Bidders prior to commencement of the Auction (the "<u>Starting Qualified Bid</u>"), and then continue in increments of $200,000. The Debtors shall not consider any subsequent bid in the Auction unless any bid after the Starting Qualified Bid exceeds the previous highest bid by at least $200,000 in value. During the course of the Auction, the Debtors shall inform each participant which Qualified Bid reflects, in the Debtors' view, the highest or otherwise best offer. To the extent that such bid has been determined to be the highest or otherwise best offer entirely or in part because of the addition, deletion or modification of a provision or provisions in the Stalking Horse APA, or related ancillary agreement or, if applicable, in the Qualified Bid, other than an increase in the cash purchase price, the Debtors shall provide notice to each participant of the value ascribed by the Debtors to any such added, deleted or modified provision or provisions.

ii.   <u>Adjournment of Auction</u>. The Auction may be adjourned as the Debtors deem appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to the Buyer, all Qualified Bidders that have submitted a Qualified Bid and counsel to any statutory committee appointed in these cases.

iii.  <u>Subsequent Bids by Buyer</u>. Buyer shall have the right to include the maximum amount of the Expense Reimbursement in the amount of any

subsequent bid that it makes in the Auction and, in the event Buyer is the Successful Bidder (defined below) as a result of a subsequent bid made at the Auction, Buyer shall be entitled to credit the maximum amount of the Expense Reimbursement against the Purchase Price payable at Closing.

iv. Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

v. Bidding at the Auction will be transcribed or videotaped.

**Other Terms**

All Qualified Bids, the Auction, and the Bidding Procedures are subject to such additional terms and conditions as are announced by the Debtors not inconsistent with the Bidding Procedures Order. At the conclusion of the Auction, (i) the successful bid shall be the bid made pursuant to the Bidding Procedures Order that represents, in the Debtors' sole discretion, the highest or otherwise best offer (the "Successful Bid," and the Qualified Bidder who submitted the Successful Bid, the "Successful Bidder"); and (ii) prior to the entry of the Sale Order, the Debtors shall announce their intention to either (a) pursue a transaction with the Successful Bidder at the Auction (and announce the identity of the Successful Bidder), or (b) not proceed with a sale to the Successful Bidder. If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid at the Auction, and (ii) definitive documentation has been executed in respect thereof. Such acceptance by the Debtors is conditioned upon approval by the Court of the Successful Bid and the entry of an order approving such Successful Bid.

**Irrevocability of Certain Bids**

The Successful Bid shall remain irrevocable in accordance with the terms of the purchase agreement executed by the Successful Bidder. The bid of the Qualified Bidder (the "Back-up Bidder") that submits the next highest or otherwise best bid (the "Back-up Bid") shall be irrevocable until the earlier of (a) 15 days after entry of the Sale Order approving the Successful Bid; (b) closing of the sale to the Successful Bidder or the Back-up Bidder; and (c) such date as the Debtors affirm in writing that, in lieu of pursuing the sale under the Stalking Horse APA or other Alternate Transaction with an Alternate Buyer, the Debtors do not intend to proceed with a sale to the Successful Bidder; provided, however, that notwithstanding the foregoing, in no event shall the Outside Back-up Date (defined below) for the Buyer be later than October 22, 2009. Following the entry of the Sale Order, if the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of the Successful Bidder, the Back-up Bidder will be deemed to have the new Successful Bid, and the Debtors will be authorized, but not required, to consummate the Sale with the Back-up Bidder without further order of the Court. In such case, the defaulting Successful Bidder's Minimum Deposit shall be forfeited to the Debtors and the Debtors shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which time certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted and the Successful Bidder was selected in accordance with these Bidding Procedures , (ii) the Auction was fair in substance and procedure, and (iii) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for the Purchased Assets and is in the best interests of the Debtors and their creditors.

**Sale Hearing**

A hearing to consider approval of the Sale of the Purchased Assets to the Successful Bidder (or to approve the Stalking Horse APA if no Auction is held) will take place on [_____], **2009 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable [_____] in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801 (the "Sale Hearing").

**Return of Deposit**

Except as otherwise provided in this paragraph with respect to any Successful Bid and any Back-up Bid, the Minimum Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within five (5) business days after the Auction. The Minimum Deposit of the Successful Bidder shall be held until the closing of the Sale of the Purchased Assets and applied in accordance with the Successful Bid. The Minimum Deposit of the Back-up Bidder shall be returned upon or within the earlier of 15 days after the date of the Sale Hearing (the "Outside Back-up Date") or the closing of the Sale of the Purchased Assets to the Successful Bidder.

**Failure to Close**

If the Successful Bidder fails to consummate the transaction in accordance with the terms of the purchase agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason (except in the case of the Buyer, in which case the termination provisions in the Stalking Horse APA shall apply to the extent applicable), the Debtors shall: (i) retain the Successful Bidder's Minimum Deposit; (ii) maintain the right to pursue all available remedies, whether legal or equitable available to them; and (iii) be free to consummate the proposed transaction with the Back-up Bidder at the highest price bid by the Back-up Bidder at the Auction, without the need for an additional hearing or Order of the Court.

**Reservation of Rights**

Except as otherwise provided in the Stalking Horse APA or the Bidding Procedures Order, the Debtors reserve the right as they may reasonably determine to be in the best interests of their estates, to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors

7

and their estates; (v) remove some of the Purchased Assets from the Auction; (vi) waive terms and conditions set forth herein with respect to all potential bidders; (vii) impose additional terms and conditions with respect to all potential bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (x) modify the Bidding Procedures as they may determine to be in the best interests of its estate or to withdraw the Motion at any time with or without prejudice.

Nothing in these Bidding Procedures shall, or shall be deemed to: (i) amend, modify, limit or otherwise affect the terms or conditions of the Stalking Horse APA, the Interim DIP Order, the Final DIP Order, the DIP Facility documents, First Lien Credit Agreement, or the rights and remedies of the parties thereunder or under applicable bankruptcy law or (ii) except for their consent to the Stalking Horse APA, constitute the consent of the DIP Lenders or First Lien Lenders to any other sale or disposition of their respective collateral. All rights under section 363(k) of the Bankruptcy Code are preserved.

**Expenses**

Any bidders presenting bids shall bear their own expenses in connection with the proposed sale, whether or not such sale is ultimately approved, in accordance with the terms of the purchase agreement. Notwithstanding the foregoing, Buyer may recover expenses in accordance with the provisions of the Stalking Horse APA.

CURRENT 15545314v6

## SCHEDULE 2

## To Bidding Procedures Order

[Notice of Auction and Sale Hearing]

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Alternative Distribution Systems, Inc., *et al.*[1] | ) | Case No. 09-_____ ( ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On [_____], 2009, the debtors in the above-captioned cases (collectively, the "Debtors") entered into an Asset Purchase Agreement by and between General Electric Capital Corporation, Global Leveraged Capital Credit Opportunity Fund I, and Regiment Capital Special Situations Fund III, L.P., or their assignee (the "Buyer") and the Debtors, dated as of [_____], 2009 (the "Stalking Horse APA"). On September 2, 2009, the Debtors filed a motion (the "Motion")[2] **[Docket No. __]** for entry of orders, among other things: (i) approving Bidding Procedures (the "Bidding Procedures") in connection with the sale (the "Sale") of substantially all of the Debtors' assets (the "Purchased Assets") either to the Buyer pursuant to the Stalking Horse APA, or with respect to a higher or otherwise better bid (a "Alternate Transaction") with an alternate buyer (an "Alternate Buyer"); (ii) scheduling a hearing (the "Sale Hearing") to consider the sale of the Purchased Assets and setting objection and bidding deadlines with respect to the Sale; (iii) approving the form and manner of notice of the Auction for the Purchased Assets and the Sale Hearing; (iv) establishing deadlines by which parties may object to the proposed assumption, assignment and/or transfer of contracts and leases and assert claims for any cure amount; (v) approving an expense reimbursement with respect to the sale of the Purchased Assets to the Buyer pursuant to the terms of the Stalking Horse APA; and (vi) granting related relief. The Motion additionally requests entry of an order or orders: (i) authorizing the sale of the Purchased Assets free and clear of liens, claims, encumbrances, and interests, pursuant to the Stalking Horse APA or such other Alternate Transaction; (ii) approving the assumption, assignment and/or transfer of the designated Executory Contracts and Unexpired Leases; and (iii) granting related relief.

2. The Debtors are seeking to sell the Purchased Assets to the Buyer or such other Successful Bidder. Approval of the sale of assets to either the Buyer or such other Successful Bidder may result in, among other things, the assumption, assignment and/or transfer by the Debtors of certain executory contracts and leases. If you are a party to an executory contract or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alternative Distribution Systems, Inc. (2412); May Logistics Services, Inc. (4970); and ADS Logistics, LLC (0782).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

lease with the Debtors, you will receive a separate notice that contains relevant dates and other information that may impact you as a party to an executory contract or lease.

3.     On [_____], 2009, the United States Bankruptcy Court for the District of Delaware entered the Bidding Procedures Order.  Pursuant to the Bidding Procedures Order, if the Debtors receive any Qualified Bids (as defined in the Bidding Procedures), the auction for the Purchased Assets shall take place on [_____], 2009, at 10:00 a.m. (prevailing Eastern Time) at the offices of Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801.  Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Schedule 1, by no later than [_____], 2009 at 12:00 noon (prevailing Eastern Time) (the "Bid Deadline") may participate at the respective auction.  Any party that wishes to take part in this process and submit a bid for the Purchased Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.     The Sale Hearing to consider approval of the Sale of the Purchased Assets to the Buyer or such other Successful Bidder free and clear of all liens, claims, and encumbrances will be held before the Honorable [_____], United States Bankruptcy Judge, 824 North Market Street, Wilmington, Delaware 19801 on [_____], 2009 at 10:00 a.m. (prevailing Eastern Time), or at such other time thereafter as counsel may be heard.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

5.     Objections, if any, to the Sale, or the relief requested in the Motion (other than with respect to cure amounts and adequate assurance which are subject to a separate notice) must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, on or before 4:00 p.m. (prevailing Eastern Time) on [_____], 2009, or such later date and time as the Debtors may agree; and (d) be served so as to be received no later than 4:00 p.m.  (prevailing Eastern Time) on the same day, upon (i) Cole, Schotz, Meisel, Forman & Leonard, P.A.,  500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attn:  Norman L. Pernick, Esq.), co-counsel to the Debtors; (ii) Proskauer Rose LLP, 70 West Madison, Suite 3800, Chicago, Illinois 60602 (Attn:  Jeff J. Marwil, Esq. and Grayson T. Walter, Esq.), co-counsel to the Debtors; (iii) Alternative Distribution Systems, Inc., 116 East 1100 North, Chesterton, Indiana 46304 (Attn:  Timothy M. May); (iv) Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603 (Attn: Larry Nyhan, Esq.), counsel to the administrative agent for the First Lien Lenders; (v) Richards Layton & Finger, 920 North King Street, Wilmington, Delaware, 19801 (Attn: Mark Collins, Esq.), co-counsel to the agent for the Debtors' postpetition lenders; (vi) counsel to any statutory committee that may be appointed in these cases; and (vii) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn:  Richard Scheparcarter).  UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER HEARING AND NOTICE.

2

6.     This Notice and the Sale Hearing is subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict and the Debtors encourage parties-in-interest to review such documents in their entirety.  Parties interested in receiving more information regarding the sale of the Purchased Assets or to obtain a copy of any related document (including the Stalking Horse APA), subject to any necessary confidentiality agreement, may make a written request to:  (i) Proskauer Rose LLP, 70 West Madison, Suite 3800, Chicago, Illinois 60602 (Attn:  Jeff J. Marwil, Esq. and Grayson T. Walter, Esq.), co-counsel to the Debtors.  In addition, copies of the Motion, the Bidding Procedures Order and this Notice can be found on (a) the Court's website, www.deb.uscourts.gov; and (b) the case management website maintained by The BMC Group, Inc., noticing and claims agent for the Debtors, and are on file with the Clerk of the Bankruptcy Court, Third Floor, 824 Market Street, Wilmington, Delaware 19801.

Dated:  Wilmington, Delaware
        September __, 2009

**COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.**

---

Norman L. Pernick (No. 2290)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

-and-

**PROSKAUER ROSE LLP**
Jeff J. Marwil (*pro hac vice* pending)
Peter J. Young (*pro hac vice* pending)
Grayson T. Walter  (*pro hac vice* pending)
Three First National Plaza
70 West Madison, Suite 3800
Chicago, Illinois 60602
Telephone:  (312) 962-3550
Facsimile:  (312) 962-3551

*Proposed Co-Counsel for Debtors and Debtors in Possession*

3

## SCHEDULE 3

## To Bidding Procedures Order

[Notice of Assumption and Assignment]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Alternative Distribution Systems, Inc., *et al.*[1] | ) | Case No. 09-_____ ( ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## NOTICE OF ASSUMPTION, ASSIGNMENT AND/OR TRANSFER

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On [_____], 2009, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors") approving, among other things, the fixing of cure amounts (the "Cure Amounts") related to the Debtors' assumption, assignment and/or transfer of certain executory contracts, unexpired leases, and other agreements (the "Assumed Agreements") listed on Exhibit A annexed hereto in connection with the sale of substantially all of the Debtors' assets (the "Purchased Assets"). The Debtors will assume, assign, and/or transfer the Assumed Agreements to General Electric Capital Corporation, Global Leveraged Capital Credit Opportunity Fund I, and Regiment Capital Special Situations Fund III, L.P., or their assignee (the "Buyer") under the terms of the Asset Purchase Agreement, dated September [__], 2009, (the "Stalking Horse APA"), or to such other Successful Bidder for the Purchased Assets under the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court and attached to the Bidding Procedures Order as Schedule 1.

2.      The Debtors believe that any and all defaults (other than the filing of these chapter 11 cases) and actual pecuniary losses under the Assumed Agreements can be cured by the payment of the Cure Amounts listed on Exhibit A annexed hereto.

3.      Any objections to (i) the assumption, assignment and/or transfer of an Assumed Agreement, or (ii) the amount asserted as the Cure Amount (each, a "Cure Amount/Assignment Objection"), must be in writing and set forth with specificity the nature of the objection and the cure amount that the objecting party believes should be paid in connection with the assumption of the Assumed Agreement (the "Claimed Cure Amount"). In addition, if the Debtors identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to Buyer not set forth in the original Notice of Assumption and Assignment, the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alternative Distribution Systems, Inc. (2412); May Logistics Services, Inc. (4970); and ADS Logistics, LLC (0782).

Debtors shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

4. To be considered a timely Cure Amount/Assignment Objection, the Cure Amount/Assignment Objection must be filed with the Bankruptcy Court and served upon (a) Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attn: Norman L. Pernick, Esq.), co-counsel to the Debtors; (b) Proskauer Rose LLP, 70 West Madison, Suite 3800, Chicago, Illinois 60602 (Attn: Jeff J. Marwil, Esq. and Grayson T. Walter, Esq.), co-counsel to the Debtors; (c) Alternative Distribution Systems, Inc., 116 East 1100 North, Chesterton, Indiana 46304 (Attn: Timothy M. May); (d) Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603 (Attn: Larry Nyhan, Esq.), counsel to the administrative agent for the First Lien Lenders; (e) Richards Layton & Finger, 920 North King Street, Wilmington, Delaware, 19801 (Attn: Mark Collins, Esq.), co-counsel to the agent for the Debtors' postpetition lenders; (f) counsel to any statutory committee that may be appointed in these cases; and (g) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn: Richard Scheparcarter); (collectively, the "Objection Notice Parties"), by the later of (i) 4:00 p.m. (prevailing Eastern time) on the date that is three (3) business days prior to the Bid Deadline; or (ii) ten (10) days after service of the relevant Supplemental Notice of Assumption and Assignment.

5. If a Cure Amount/Assignment Objection is timely filed, the Debtors may, in their sole discretion, resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court. In the event that the Debtors and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection, a hearing with respect to that objection shall be held before the Honorable [_____], United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, Room [_____],824 North Market Street, Wilmington, DE 19801 at such date and time as the Debtors may schedule with the Court.

6. Unless the Cure Amount/Assignment Objection is timely filed and served, the assumption, assignment and/or transfer of the applicable Assumed Agreement will proceed without further notice at the hearing to approve the sale of the Purchased Assets.

7. Parties that fail to file and serve timely Cure Amount/Assignment Objections shall be deemed to have waived and released any and all rights to assert against the Debtors, the Buyer or other Successful Bidder cure amounts different from the Cure Amounts listed on Exhibit A hereto and shall be forever barred and estopped from asserting or claiming against the Debtors, the Buyer or other Successful Bidder, or any assignee of any Assumed Agreement that any additional amounts are due or defaults exist, or prohibitions or conditions to assignment exist or must be satisfied, under such Assumed Agreement.

8. The Debtors, the Buyer or the other Successful Bidder, as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Purchased Assets no later than one (1) business day prior to the Sale Hearing, or, if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtors, no later than five (5) business

2

days following such hearing. The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

9.     If no Cure Amounts are due under an Assumed Agreement, and the non-debtor party to the Assumed Agreement does not otherwise object to the Debtors' assumption, assignment and/or transfer of the Assumed Agreement, no further action need to be taken on the part of that non-Debtor party.

10.     Copies of the Bidding Procedures Order and other relevant documents are posted on: (a) the Court's website, www.deb.uscourts.gov; and (b) the case management website maintained by The BMC Group, Inc., noticing and claims agent for the Debtors, [www.bmcgroup.com/ads].

*The remainder of this page was left intentionally blank.*

11.    The Debtors' decision to sell, assign and/or transfer to the Buyer or other Successful Bidder the Assumed Agreements is subject to Court approval and the Closing. Accordingly, absent such Closing, any of the Assumed Agreements shall not be deemed to be sold, assigned and/or transferred, and shall in all respects be subject to further administration under the Bankruptcy Code.  The inclusion of any document on the list of Assumed Agreements shall not constitute or be deemed to be a determination or admission by the Debtors or the Buyer or other Successful Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dated:  Wilmington, Delaware
          September __, 2009

**COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.**

_____

Norman L. Pernick (No. 2290)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

-and-

**PROSKAUER ROSE LLP**
Jeff J. Marwil (*pro hac vice* pending)
Peter J. Young (*pro hac vice* pending)
Grayson T. Walter  (*pro hac vice* pending)
Three First National Plaza
70 West Madison, Suite 3800
Chicago, Illinois 60602
Telephone:  (312) 962-3550
Facsimile:  (312) 962-3551

*Proposed Co-Counsel for Debtors and Debtors in Possession*

CURRENT 15545314v6

## EXHIBIT A

## To Notice of Assumption and Assignment

[Assumed Agreements]

[To be provided]