# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| Alternative Distribution Systems, Inc., *et al.*[1] | ) Case No. 09-_____ ( ) |
| Debtors. | ) Joint Administration Requested |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AUTHORIZING AND APPROVING (I) THE ENGAGEMENT AGREEMENT WITH ROBERT F. ANGART TO SERVE AS INTERIM CHIEF EXECUTIVE OFFICER OF THE DEBTORS AND (II) THE EMPLOYMENT OF TEMPORARY STAFF *NUNC PRO TUNC* TO SEPTEMBER 2, 2009

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 105 and 363 of title 11 of the United States Code (11 U.S.C. §§ 101-1532, as amended, the "Bankruptcy Code"), (i) authorizing and approving the engagement agreement with Robert F. Angart to serve as interim Chief Executive Officer ("CEO") of each of the Debtors and (ii) authorizing the employment, as additional temporary staff, of Timothy M. May, Chad Peterson and such other additional consultants as Mr. Angart may determine to be necessary to perform his duties (collectively, the "Temporary Staff"). The Debtors seek to employ Mr. Angart pursuant to the terms of the Engagement Agreement between Mr. Angart and the Debtors dated September 2, 2009 (the "Engagement Agreement"). A copy of the Engagement Agreement is attached hereto as Exhibit B. In support of this Motion, the Debtors rely upon the Declaration of Robert F. Angart, Chief Executive Officer of the Debtors,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alternative Distribution Systems, Inc. (2412); May Logistics Services, Inc. (4970); and ADS Logistics, LLC (0782).

(the "Angart Declaration"), attached hereto as Exhibit C and incorporated herein by reference, and respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

4. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under title 11 of the Bankruptcy Code, commencing the Debtors' chapter 11 cases (the "Chapter 11 Cases"). The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases and, as of the date of the filing of this Motion, no official committees have been appointed or designated. Concurrently herewith, the Debtors filed a motion seeking joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

5. The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of Timothy M. May, Chief Operating Officer of each of the Debtors, in Support of First Day Pleadings* (the "May Declaration") filed on the Petition Date and incorporated herein by reference.

## RELIEF REQUESTED

6. By this Motion, the Debtors request an Order (i) authorizing and approving the Engagement Agreement with Robert F. Angart to serve as interim Chief Executive Officer ("CEO") of each of the Debtors and (ii) authorizing the employment of additional Temporary Staff. Specifically, the Debtors respectfully request entry of an order pursuant to sections 105 and 363 of the Bankruptcy Code authorizing and approving the engagement of Mr. Angart to perform those services that will be necessary during these Chapter 11 Cases, as more fully described below.

## SERVICES TO BE PROVIDED

7. The Debtors anticipate that Mr. Angart may render the following services in these cases:

(i) Directing the Debtors' operations, including the efforts of other professionals in connection with the Debtors' financial restructuring, including all sale, refinancing, or liquidation activities;

(ii) directing negotiations with, and reporting to, the Debtors' significant creditors, including without limitation, trade creditors and senior lenders (including any lenders under any debtor-in-possession credit arrangement and any Creditors Committee);

(iii) directing the negotiations with all parties interested in the possible acquisition of the Debtors' assets within the Bankruptcy process, and evaluating all such offers for purposes of deriving the best and highest value for all such assets for the benefit of the Debtors' creditors;

(iv) assisting the Debtors in complying with the requirements of the U.S. Bankruptcy Code;

(v) assisting in the development and implementation of a Plan of Reorganization, if appropriate;

(vi) directing all cash management matters throughout the pendancy of the bankruptcy process;

(vii) maintaining full responsibility for all of the Debtor's operations, including, but not limited to day to day supervision of all aspects of the Debtor and its personnel;

(viii) reporting to the Debtors' Boards of Directors and Board of Managers;

(ix) responding to all inquiries of the Bankruptcy Court, the U.S. Trustee's Office and the Debtors' creditor constituencies during the course of the bankruptcy process, including compliance with all aspects of any debtor-in-possession operations; and

(x) other such functions as requested by the Debtors or their counsel to assist the Debtors in these Chapter 11 cases.

8. As indicated in the Engagement Agreement, Mr. Angart has agreed to serve as the Debtors' CEO. Working collaboratively with the Debtors' senior management team, the Debtors' boards of directors and board of managers and the Debtors' other professionals, Mr. Angart and the Temporary Staff will assist management in the oversight of the daily operations of the Debtors' business and assist the Debtors in evaluating strategic and tactical options, including directing the negotiations with parties interested in the acquisition of the Debtors' assets within the Bankruptcy process, and providing other executive and management services during the chapter 11 process. Mr. Angart will also provide oversight with certain elements of the Debtors' cash management functions.

9. The Debtors respectfully submit that the services to be provided by Mr. Angart will not be duplicative of those provided by the Debtors' other professionals and Mr. Angart will coordinate any services performed at the Debtors' request with the services of the Debtors' other professionals to avoid duplication of effort.

10. Subject to this Court's approval of the Motion, Mr. Angart is willing to serve as the Debtors' CEO and to perform the services described above.

## Terms of Retention[2]

11. The Engagement Agreement provides that Mr. Angart will be compensated for his services at the rate of $350 per hour, which fees may be assigned by Mr. Angart to Hillyer Group, LLC, a turnaround management firm in which Mr. Angart is a principal. Moreover, the Temporary Staff to be hired by Mr. Angart will be compensated at rates ranging from $175 to $650 per hour, depending upon the relative experience of the individuals employed as Temporary Staff. Mr. Angart and the Temporary Staff will be compensated on a hourly rate basis only for the actual time spent providing services to the Debtors. The noted hourly rates are the current rates in effect and may be increased from time to time in accordance with the normal billing practices of Mr. Angart and the Temporary Staff.

12. Mr. Angart and the Temporary Staff will also seek reimbursement for necessary expenses incurred, which shall include airfare, hotel, meals, mileage, parking, car rentals, photocopying and other incidentals as well as any attorney fees incurred in providing professional services.

13. Mr. Angart will submit weekly invoices to the Debtors, with copies of such invoices to the United States Trustee and any Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases. The Debtors will be authorized to pay, in the ordinary course of their business, all reasonable amounts invoiced by Mr. Angart for fees and out of pocket expenses on a weekly basis. Mr. Angart will not be paid a profit or "markup" on any such out of pocket expenses.

---

[2] The summary of the Engagement Agreement herein is qualified in its entirety by the actual terms of the Engagement Agreement. If there are any inconsistencies between the summary contained herein and the Engagement Agreement, the Engagement Agreement shall control. Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Engagement Agreement as modified herein and the Order approving this Motion.

14. Because Mr. Angart is not being employed as a professional under section 327 of the Bankruptcy Code, he will not submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Mr. Angart will, however, submit to this Court monthly reports of compensation earned and any amounts paid to Temporary Staff (each, a "Monthly Report"). Parties in interest in these Chapter 11 Cases shall have the right to object to fees paid when Monthly Reports of compensation earned are filed with this Court. The first Monthly Report will be submitted fifteen (15) days from the end of the first calendar month after the Petition Date, and will cover the period to, through and including the last day of the first calendar month after the Petition Date. This procedure will continue at monthly intervals thereafter.

## Indemnification

15. In the Engagement Agreement, the Debtors agreed to indemnify, hold harmless and defend Mr. Angart, the Temporary Staff and their affiliates, along with their directions, officers and principals and consultants, against all claims, liabilities, losses, damages and reasonable expenses as they are incurred, including reasonable legal fees and disbursements of counsel, as further described in the Engagement Agreement, except for claims ultimately determined by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of those parties. Notwithstanding anything in the Engagement Agreement, the Debtors request the authority to indemnify Mr. Angart and the Temporary Staff on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' insurance policies.

16. Furthermore, Mr. Angart and the Temporary Staff will be entitled to receive whatever indemnities are made available, during the term of their engagement, to other officers of the Debtors, whether under the by-laws, certificates of incorporation, applicable corporate laws or contractual agreements of general applicability to such officers.

## Qualifications of Mr. Angart

17. Mr. Angart is highly skilled turnaround professional focused on assisting companies, and creditors of companies, that are experiencing financial difficulties.

18. Mr. Angart has been a turnaround professional since 2000, serving clients in the manufacturing, distribution, automotive, high technology, real estate, long-term care, insurance, non-profit organization and printing industries. His assignments have included consulting roles, president, chief operating officer, chief restructuring officer and chief financial officer positions, and investigating fraudulent transactions through forensic analysis.

19. Mr. Angart is experienced in both large and small cases; whereby clients have ranged in size from $5 million in sales to $2 billion in sales. He is experienced in the turnaround of companies, crisis management, out-of-court workouts, sale and liquidation of assets, restructuring and refinancing of debts, and chapter 11 reorganization and sale processes.

20. Mr. Angart's experiences and expertise on behalf of companies are extensive in many areas including:

   (i) Cash flow stabilization including cash flow forecasting, cash generation, collections improvement and disbursements management;

   (ii) immediate profitability improvement through gross margin improvement and overhead reduction;

   (iii) preparation of financial projections/ business models;

   (iv) communication and negotiations with lenders;

   (v) trade credit and vendor relations management;

   (vi) management process improvement including development and implementation of enhanced financial reporting, improved controls, improved budgeting processes, operation performance, operational reorganization and performance based compensation systems;

   (vii) debt restructuring;

   (viii) design, evaluation and implementation of workout alternatives;

(ix) development of business plans and strategic plans;

(x) valuation;

(xi) refinancing;

(xii) chapter 11 planning and preparation; and

(xiii) chapter 11 assistance including Section 363 sales, plan of reorganization development and negotiation, schedules preparation, preferences analysis, claims analysis and negotiation, DIP financing and substantive consolidation.

21. Accordingly, the Debtors believe that Mr. Angart is uniquely qualified to assist them in these Chapter 11 Cases.

## Disinterestedness of Professionals

22. As provided in the Angart Declaration, and subject to the disclosures, exceptions and limitations set forth therein, Mr. Angart has informed the Debtors that he is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code.

23. As provided in the Angart Declaration, and subject to the disclosures, exceptions and limitations set forth therein, Mr. Angart has informed the Debtors that he does not hold or represent an interest adverse to the estate with respect to the matters on which he will be employed, in accordance with section 363 of the Bankruptcy Code.

24. As provided in the Angart Declaration, and subject to the disclosures, exceptions and limitations set forth therein, Mr. Angart has informed the Debtors that: (a) Mr. Angart's connections with the Debtors, creditors, equity holders, any other party in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee are disclosed in the Angart Declaration; and (b) Mr. Angart is

not a relative of the United States Trustee for the District of Delaware or of any known employee in the office thereof, or any United States Bankruptcy Judge of the District of Delaware.

25. Mr. Angart has informed the Debtors that he has not provided, and will not provide, professional services to any of the creditors, other parties in interest or their attorneys with regard to any matter related to these Chapter 11 Cases.

26. Prior to the Petition Date, Timothy M. May and Chad Peterson (collectively the "QORVAL Staff"), each of whom will assist Mr. Angart as Temporary Staff during these Chapter 11 Cases, were retained by the Debtors as turnaround consultants and served as officers and/or directors or managers of the Debtors. Accordingly, the QORVAL Staff are not "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code and such disinterestedness is not required for retention of the QORVAL Staff under section 363(b) of the Bankruptcy Code. Notwithstanding the lack of disinterestedness on account of their prior service as officers and directors or managers of the Debtors, the Debtors and Mr. Angart believe that the continued assistance of the QORVAL Staff is critical to the Debtors' successful operation of their business during the chapter 11 process. By virtue of their prepetition service, the QORVAL Staff has developed an extensive knowledge of the Debtors business and operations which will be vital to the day to day management of the Debtors business during these Chapter 11 Cases. In addition, based upon the Declaration of Timothy M. May attached hereto as Exhibit D (the "QORVAL Declaration"), subject to the disclosures, exceptions and limitations set forth therein, the Debtors believe that the QORVAL Staff does not hold or represent an interest adverse to the estate with respect to the matters on which they will be employed.

27. As provided in the QORVAL Declaration, and subject to the disclosures, exceptions and limitations set forth therein, Mr. May has informed the Debtors that: (a) the

QORVAL Staff's connections with the Debtors, creditors, equity holders, any other party in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee are disclosed in the QORVAL Declaration; and (b) none of the QORVAL Staff are relatives of the United States Trustee for the District of Delaware or of any known employee in the office thereof, or any United States Bankruptcy Judge of the District of Delaware.

28. Mr. May has informed the Debtors that the QORVAL Staff has not provided, and will not provide, professional services to any of the creditors, other parties in interest or their attorneys with regard to any matter related to these Chapter 11 Cases.

## Basis for Relief and Applicable Authority

29. Section 363(b) of the Bankruptcy Code provides, in part, that a debtor in possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts interpreting section 363(b) of the Bankruptcy Code have held that transactions should be approved pursuant to this provision when, as here, they are supported by management's sound business judgment. See In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (outlining requirements for sale of assets pursuant to section 363); In re Phoenix Steel Corp., 82 B.R. 334, 336 (Bankr. D. Del. 1987).

30. The proposed use, sale or lease of property of the estate may be approved under section 363(b) of the Bankruptcy Code if it is supported by sound business justification. See In re Montgomery Ward, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions"). Although established in the context of a proposed sale, the "business judgment" standard has been applied in non-sale situations. See,

e.g., Institutional Creditors of Continental Air Lines v. Continental Air Lines (In re Continental Air Lines), 780 F.2d 1223, 1226 (5th Cir. 1986) (court applied "business judgment" standard in context of proposed "use" of estate property). Moreover, pursuant to section 105 of the Bankruptcy Code, a court has expansive equitable powers to fashion any order or decree which is in the interest of preserving or protecting the value of a debtor's assets. See, e.g., In re Chinichian, 784 F.2d 1440, 1443 (9th Cir. 1986).

31. Once a debtor articulates a valid business justification, "the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)); In re Johns Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions").

32. Courts recognize the applicability of section 363(b) of the Bankruptcy Code to the use of estate property to compensate individuals employed outside the ordinary course of business. See, e.g., In re First Services Corp., 25 B.R. 66, 69 (Bankr. D. Conn. 1982). Indeed, courts have approved such a request by debtors under section 363(b) of the Bankruptcy Code for the purpose of employing officers to provide interim management and/or restructuring services. See, e.g., DBSI, Inc., Case No. 08-12687 (PJW) (Banrk. D. Del. 2008); In re Powermate Holding Corp., Case No. 08-10498 (KG) (Bankr. D. Dei. 2008); In re American Home Mortgage

Holdings, Inc., Case No. 07-11047 (CSS) (Bankr. D. Del. 2007); In re Sea Containers Limited, Case No. 06-11156 (KJC) (Bankr. D. Del. 2006); In re Werner Holding Co. (DE), Inc., Case No. 06-10578 (KJC) (Bankr. D. Del. 2006); In re Meridian Automotive Systems - Composites Operations, Inc., Case No. 05-11168 (Bankr. D. Del. 2005) (Walrath, J.); In re Bridgeport Holdings, Case No. 03-12825 (PJW) (Bankr. D. Del 2003).

33. The Debtors submit that their employment of Mr. Angart as CEO and the Temporary Staff, pursuant to the terms and conditions of the Engagement Agreement is in the best interest of the Debtors, their estates and creditors, as the expertise of Mr. Angart and the Temporary Staff in providing restructuring and management services to chapter 11 debtors and debtors in possession, coupled with their familiarity with the Debtors, their operations and financial condition, make Mr. Angart and the Temporary Staff uniquely qualified to provide the restructuring and management (including Mr. Angart serving as CEO) contemplated in the Engagement Agreement. The Debtors submit that, based on the facts and circumstances of these Chapter 11 Cases, the relief requested herein is necessary, prudent and a sound exercise of the Debtors' business judgment.

34. The Debtors submit that the employment of Mr. Angart and the Temporary Staff under the terms contained in the Engagement Agreement would greatly benefit the Debtors' estates and creditors. Accordingly, based on the foregoing facts and authorities, the Debtors respectfully submit that the relief requested herein should be granted.

### Notice

35. Notice of this Motion has been given to: (a) the United States Trustee; (b) the Prepetition Agent for the First Lien Lenders; (c) counsel for the Prepetition Agent for the First Lien Lenders; (d) the Collateral Agent for the Second Lien Lenders; (e) counsel for the Collateral Agent for the Second Lien Lenders; (f) the Debtors' thirty largest unsecured creditors

as set forth in the consolidated list filed with the Debtors' petitions; (g) all required governmental agencies; and (h) the Debtors' cash management banks. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is required.

## No Prior Request

36. No prior Motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, (i) granting this Motion; (ii) authorizing and approving the Debtors Engagement Agreement with Mr. Angart to perform the services set forth herein; (iii) authorizing and approving the employment of the Temporary Staff to perform the services set forth herein; and (iv) granting such other and further relief as this Court deems appropriate.

Dated: Wilmington, Delaware
September 2, 2009

**COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.**

*/s/ Norman L. Pernick*

Norman L. Pernick (No. 2290)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

-and-

**PROSKAUER ROSE LLP**
Jeff J. Marwil (*pro hac vice* pending)
Peter J. Young (*pro hac vice* pending)
Grayson T. Walter (*pro hac vice* pending)
Three First National Plaza
70 West Madison, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

*Proposed Co-Counsel for Debtors and Debtors in Possession*