# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Alternative Distribution Systems, Inc., *et al.*[1] | ) | Case No. 09-_____ ( ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

## APPLICATION OF THE DEBTORS FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF EVE PARTNERS, LLC AS FINANCIAL ADVISOR, *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move the Court, pursuant to this application (this "Application"), for the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain EVE Partners, LLC ("EVE"), as financial advisor for the Debtors, effective *nunc pro tunc* to the Petition Date (defined below). In support of this Application, the Debtors rely on the Declaration of J.E. Mamo, III of EVE (the "Mamo Declaration") attached hereto as **Exhibit B**, and the *Declaration of Timothy M. May, Chief Operating Officer of each of the Debtors, in Support of First Day Pleadings* (the "May Declaration"), filed concurrently herewith. In further support of this Application, the Debtors respectively represent as follows:

### Jurisdiction

1.  The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alternative Distribution Systems, Inc. (2412); May Logistics Services, Inc. (4970); and ADS Logistics, LLC (0782).

3.     The bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

On the date hereof (the "Petition Date"), Alternative Distributions Systems, Inc. and two of its affiliates each filed a voluntary petition for relief under title 11 of the Bankruptcy Code, commencing the Debtors' chapter 11 cases (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases and, as of the date of the filing of this Motion, no official committees have been appointed or designated. Concurrently herewith, the Debtors filed a motion seeking joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the May Declaration, filed on the Petition Date and incorporated herein by reference.

## Relief Requested

4.     The Debtors seek the entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Local Rule 2016-1, authorizing the employment and retention of EVE in accordance with the terms and conditions set forth in that certain Engagement Agreement among the Debtors and EVE, dated August 17, 2009 (the "Engagement Agreement"), a copy of which is attached hereto as **Exhibit C**.

### A. The Debtors' need for a financial advisor

5. In light of the size and complexity of these Chapter 11 Cases, the Debtors require the services of a seasoned and experienced financial advisor and one that is familiar with the Debtors' business, operations and industry. In particular, the Debtors require an experienced financial advisor to assist them in the process of marketing their business as a going concern and evaluating any such proposed transaction. Additionally, the Debtors believe that by having a financial advisor provide these services in these bankruptcy cases, other professionals in these cases – and company officers who might otherwise handle complex financial and financing matters – will be able to focus better on their respective competencies and their core tasks: to efficiently and effectively manage the Debtors' business and operations and to facilitate a successful chapter 11 process.

### B. The Retention of EVE

6. EVE is an investment banking firm with its principal office located at 3033 Maple Drive, NE, Atlanta, Georgia. EVE provides a broad range of corporate advisory services to its clients including, without limitation, services pertaining to: (i) general financial advice, (ii) mergers, acquisitions and divestitures, (iii) equity recapitalizations, (iv) distressed mergers and acquisitions and (v) corporate restructurings.

7. EVE's practice is concentrated on providing investment banking and financial advisory services for the transportation and logistics industry, with a focus on mergers and acquisitions and research. EVE's senior professionals have extensive experience in the reorganization and restructuring of troubled companies. The Debtors selected EVE after considering their needs and alternatives and interviewing other firms.

8. As a result of the prepetition engagement of EVE by the Debtors, EVE is familiar with the Debtors' business operations, capital structure, financing documents and other material

information and is able to assist the Debtors in their restructuring efforts. The Debtors believe that EVE is well qualified to provide its services to the Debtors in a cost-effective, efficient and timely manner. EVE has indicated a willingness to act on behalf of the Debtors and subject itself to the jurisdiction and supervision of the Court. Additionally, the Debtors have been advised by EVE that EVE will coordinate with the other retained professionals in this bankruptcy case to eliminate unnecessary duplication or overlap of work. The Debtors submit that the employment and retention of EVE would be in the best interest of the Debtors, their estates and creditors.

C.     **Services to Be Provided**

9.     As further set forth in the Engagement Agreement, the Debtors have requested that EVE serve as financial advisor during these Chapter 11 Cases to perform services (the "Services") on behalf of the Debtors in connection with the sale of the Debtors' assets (the "Transaction") including:[2]

> a.   assisting the Debtors in the preparation and distribution of materials describing the Transaction;
>
> b.   undertaking financial analysis relating to the Transaction;
>
> c.   coordinating due diligence efforts;
>
> d.   advising the Debtors regarding the economic terms of a Transaction;
>
> e.   advising the Debtors on strategy and tactics during the negotiation of a Transaction; and
>
> f.   assisting, where appropriate, in expediting the documentation for and the closing of any Transaction.

---

[2] Capitalized terms not defined herein shall have the meaning set forth in the Engagement Agreement.

**D. Professional Compensation**

10. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

11. As set forth more fully in the Engagement Agreement, and subject in its entirety to the terms set forth in the Engagement Agreement, EVE will be compensated for the Services, subject to Court approval, in the following manner (the "Fee Structure"):[3]

   a. A non-refundable retainer in the amount of $50,000; and

   b. A fee (the "Fee") equal to two percent (2.0%) of the Gross Value (as defined in the Engagement Agreement) of a Transaction, provided however, no Fee will be payable to EVE for a "credit bid" transaction consummated by the Debtors' senior lenders.

12. Subject to approval of this Court and the terms of the Engagement Agreement, the Debtors shall reimburse EVE for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, telephone, facsimile and printing expenses and other customary expenditures) incurred by EVE in connection with the engagement.

13. The Debtors believe that the Fee Structure is comparable to those generally charged by financial advisory and investment banking firms of similar stature to EVE and for comparable engagements, both in and out of bankruptcy proceedings, and reflect a balance

---

[3] All terms set forth herein are subject in their entirety to the Engagement Agreement. Except as explicitly stated herein, to the extent anything set forth in this Application conflicts with the Engagement Agreement, the Engagement Agreement controls.

between a fixed and a contingent amount which is tied to the consummation and closing of the transactions and services contemplated by the Debtors and EVE in the Engagement Agreement.

14. The hours worked, the results achieved and the ultimate benefit to the Debtors of the work performed by EVE in connection with this engagement may vary and the Debtors have taken this into account in setting the above fees. In order to induce EVE to do business with the Debtors, the fees were set with consideration of the difficulty of the assignment and the potential for failure (among other things).

15. EVE's restructuring capabilities and mergers and acquisitions expertise were important factors to the Debtors in determining the Fee Structure and the Debtors believe that the ultimate benefit to the Debtors of EVE' services hereunder cannot be measured merely by reference to the number of hours to be expended by EVE' professionals in the performance of such services.

16. The Debtors also acknowledge and agree that the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of EVE and its professionals, and in light of the fact that such commitment may foreclose other opportunities for EVE and that the actual time and commitment required of EVE and its professionals to perform the Services may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

17. In light of the foregoing, the Debtors believe that the Fee Structure is both fair and reasonable under the circumstances of this engagement.

18. Prior to the Petition Date, in addition to the $50,000 retainer payment identified in paragraph 11 above, EVE received approximately $31,086 from the Debtors for prepetition services rendered and expenses incurred in advising the Debtors. EVE has already received

payment on account of any fees and expenses that were accrued prepetition. EVE has informed the Debtors that it will hold any amounts received prepetition in excess of fees and expenses that accrued prepetition, if any, and apply such excess amounts towards fees and expenses that accrue postpetition.

19. In accordance with Section 504 of the Bankruptcy Code, EVE has informed the Debtors that there is no agreement or understanding between EVE and any other entity, other than an employee of EVE, for the sharing of compensation received or to be received for services rendered in connection with these cases.

### E. EVE' Disinterestedness

20. Based upon the Mamo Declaration attached hereto as **Exhibit B** and subject to the disclosures made therein, EVE has informed the Debtors that EVE: (a) is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b); and (b) does not hold or represent an interest adverse to the Debtors' estates. Furthermore, except as disclosed in the Mamo Declaration, EVE has indicated that based on the results of its conflicts research conducted to date, and to the best of its knowledge, neither EVE, nor any employee thereof, has any connection with the Debtors, its creditors, equity holders, or any other parties in interest (as reasonably known to EVE) or their respective attorneys and accountants, or the United States Trustees or any person employed in the office of the United States Trustee.

21. EVE has indicated that if it discovers any information that is contrary to or pertinent to the statements made in the Mamo Declaration, EVE will promptly disclose such information to this Court, creditors of the Debtors and the United States Trustee.

F.  **Fee Application and Waiver**

22. EVE has informed the Debtors that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis or maintain time on a "project category basis." The Debtors believe that if EVE was required to keep detailed time entries or keep time records on a "project category" basis as required by the rules of this Court, it would be unduly burdensome and time consuming. Thus, given that the nature of EVE's Fee Structure is not based upon the amount of time spent providing financial advisory services, the Debtors and EVE request that the Local Rules of this Court be modified with respect to EVE so as to allow EVE to submit its billing records to the court in a summary format which sets forth reasonably detailed daily descriptions of those services provided on behalf of the Debtors, the approximate time in one hour billing increments expended in providing those services and the individuals who provided professional services on behalf of the Debtors.

23. EVE intends to apply to the Court for payment of compensation and reimbursement of fees and expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the guidelines promulgated by the Office of the United States Trustee for the District of Delaware (the "United States Trustee") and the Local Rules and orders of this Court and pursuant to any additional procedures that may be or have already been established by the Court in these cases.

G.  **Other Terms of Engagement**

*Indemnity Provisions*

24. As set forth in the Engagement Agreement and subject to the terms and conditions therein, the Debtors agreed to the following (the "Indemnity Provision"):

the Debtors agree to indemnify and hold harmless EVE, its members, directors, employees, officers, agents and controlling persons (each, an "Indemnified Party") from and against any and all losses, claims damages, liabilities (whether direct or indirect) and expenses, joint or several (including all fees of counsel and other expenses incurred by any Indemnified Party in connection with the preparation for, or defense of, any claim, action or proceeding, whether or not resulting in any liability) or any settlements relating to such claims, to which such Indemnified Party may become subject under any applicable federal or state law, or otherwise, caused by or arising out of EVE's acting for the Debtors pursuant to the Engagement Agreement, the transactions contemplated thereby, or EVE's role in connection therewith, except that the Debtors will not be held liable to the extent any loss, claim, damage, liability or expense is determined by final judgment of a court of competent jurisdiction to have resulted primarily from EVE's gross negligence or willful misconduct.

25. The Debtors believe the Indemnity Provision is a reasonable term and condition of the EVE engagement. Unlike the market for other professionals that the Debtors may retain, indemnification is a standard term of the market for investment bankers and financial advisors. EVE and the Debtors believe that the Indemnity Provision is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to EVE and for comparable engagements, both in and out of court.

*Dispute Resolution*

The Debtors and EVE have agreed, subject to the Court's approval of this Application, that notwithstanding the Engagement Agreement: (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by EVE to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of EVE, shall be brought in this Court or the United States District Court for the District of Delaware (the "District Court") (if the reference is withdrawn); (b) EVE and the Debtors and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such

courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions, or lawsuits; (c) EVE and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if this Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, EVE and the Debtors, and any and all successors and assigns thereof, will submit to arbitration as provided for in the Engagement Agreement; and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction. By this Application, the Debtors seek approval of this agreement by the Court. Further, EVE has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or the District Court (if the reference is withdrawn) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

26. The Debtors believe that the provisions set forth above are reasonable terms and conditions of the EVE engagement. Furthermore, subject to the additional provision regarding indemnity set forth herein, the Debtors and EVE negotiated the Fee Structure in contemplation that the provisions of the Engagement Agreement would be approved by this Court in its entirety.

### Basis for Relief

27. Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent to assist the [debtor] in carrying out the [debtor's] duties under [the Bankruptcy Code].

11 U.S.C. § 327(a).

28. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

29. Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, Bankruptcy Rules and Local Rules to support entry of an order authorizing the Debtors to employ and retain EVE in these Chapter 11 Cases.

30. The Debtors believe that the employment of EVE would be in the best interests of the Debtors and their estates and desire to employ EVE, effective on the Petition Date, with compensation to be determined upon application to this Court. Were the Debtors required to engage a financial advisor other than EVE in connection with these proceedings, the Debtors, their estates and all parties in interest would be unduly prejudiced by the time and expense necessarily attendant to such counsel's familiarization with the intricacies of the Debtors' businesses and financial affairs.

## Notice

31. Notice of this Motion has been given to: (a) the United States Trustee; (b) the Prepetition Agent for the First Lien Lenders; (c) counsel for the Prepetition Agent for the First Lien Lenders; (d) the Collateral Agent for the Second Lien Lenders; (e) counsel for the Collateral Agent for the Second Lien Lenders; (f) the Debtors' thirty largest unsecured creditors as set forth in the consolidated list filed with the Debtors' petitions; and (g) all required governmental agencies. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

32. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request the entry of an order: (a) authorizing and approving the retention and employment by the Debtors of EVE as their financial advisor, effective as of the Petition Date; and (b) granting such other and further relief as this Court deems just and proper.

Dated: September 2, 2009
Wilmington, Delaware

**Alternative Distribution Systems, Inc.**
**May Logistics Services, Inc.**
**ADS Logistics, LLC**

*/s/ Timothy M. May*
Timothy M. May
Chief Operating Officer