## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Alternative Distribution Systems, et al.,[1] | Case No. 09-13099 (PJW) |
| Debtors. | Jointly Administered |
| | **Related to Docket No. 12** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (II) AUTHORIZING THE DEBTORS' LIMITED USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364, AND (IV) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Upon the motion of the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), dated September 2, 2009 (the "Motion"), (a) seeking the entry of an interim order (the "Order") and a final order (the "Final Order"): (i) authorizing ADS Logistics, LLC (the "Borrower") to obtain senior secured post-petition financing in an aggregate principal amount not to exceed $3,309,470.12 (the "DIP Facility"), pursuant to section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and authorizing each of the other Debtors (collectively, the "Guarantors") to guaranty the Borrower's obligations under the DIP Facility, from General Electric Capital Corporation ("GE Capital") as agent (in such capacity, the "DIP Agent") for itself and a syndicate of financial institutions (collectively with GE Capital, the "DIP Lenders"), pursuant to the terms of this Order and that certain DIP Credit Agreement by and among the Borrower, the Guarantors, the DIP Agent, and the DIP Lenders, in substantially the form attached to the Motion as Exhibit A (as the same may be amended, restated, supplemented or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alternative Distribution Systems, Inc. (2412); May Logistics Services, Inc. (4970); and ADS Logistics, LLC (0782).

otherwise modified from time to time, the "DIP Credit Agreement"),[2] and any related documents required to be delivered by or in connection with the DIP Credit Agreement (collectively, the "DIP Credit Documents"); (ii) authorizing the Debtors to execute and enter into the DIP Credit Documents and to perform such other and further acts as may be required in connection with the DIP Credit Documents; (iii) granting security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Agent, for the benefit of itself and the DIP Lenders, to secure all obligations of the Debtors under and with respect to the DIP Facility; (iv) authorizing the Debtors' limited use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (as so defined, "Cash Collateral"), on the terms and conditions set forth in this Order and in the DIP Credit Agreement; (e) granting adequate protection to the Prepetition Secured Lenders (as hereinafter defined), whose liens and security interests are being primed by the DIP Facility, as more fully set forth in this Order; and (v) modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors, the DIP Agent, and the DIP Lenders to implement the terms of this Order; (b) requesting, pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), that an emergency interim hearing (the "Interim Hearing") on the Motion be held for the Court to consider entry of this Order, which authorizes the Debtors to borrow or obtain letters of credit under the DIP Credit Documents, on an interim basis, up to an aggregate principal or face amount not to exceed $2,500,000; and (c) requesting, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), that this Court (i) schedule a final hearing (the "Final Hearing") on the Motion within thirty (30) days of the Petition Date (as hereinafter defined) to

---

[2] Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the DIP Credit Agreement.

consider entry of the Final Order authorizing the balance of the borrowings and letter of credit

issuances under the DIP Credit Documents on a final basis, and (ii) approve notice procedures

with respect thereto; and the Interim Hearing having been held by this Court on September 3,

2009 and the Court having considered the Motion and all pleadings related thereto, including the

record made by the Debtors at the Interim Hearing; and after due deliberation and consideration,

and good and sufficient cause appearing therefor:

### THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A.     On September 2, 2009 (the "Petition Date"), each Debtor filed with this

Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are

continuing to operate their respective businesses and manage their respective properties as

debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The Debtors have provided notice of the Motion and the Interim Hearing

by facsimile or overnight mail to: (i) the Office of the United States Trustee for this District (the

"U.S. Trustee"); (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis;

(iii) counsel to the DIP Agent; (iv) counsel to the First Lien Agent (as hereinafter defined); (v)

counsel to the Second Lien Agent (as hereinafter defined); (vi) all other parties with liens of

record on assets of the Debtors as of the Petition Date; (vii) all financial institutions at which the

Debtors maintain deposit accounts; (viii) the landlords for all non-residential real properties

occupied by the Debtors as of the Petition Date; and (ix) all other parties requesting notice

pursuant to Bankruptcy Rule 2002. Given the nature of the relief sought in the Motion, the Court

concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rule 4001 in all respects.

D.    The Debtors hereby admit, stipulate and agree (without prejudice to the rights of any other person or entity as set forth in paragraph 29) that:

(1)    Pursuant to that certain Third Amended and Restated Credit Agreement dated as of January 18, 2008 (as amended, restated, supplemented or otherwise modified from time to time, the "First Lien Credit Agreement"), by and among the Borrower, as borrower, each of the other Debtors as guarantors , GE Capital as Documentation Agent and Administrative Agent (in such capacities, the "First Lien Agent") and as a Lender and Issuing Bank, and the other lenders party thereto from time to time (collectively, the "First Lien Lenders"), the First Lien Lenders extended revolving and term credit facilities to, and issued letters of credit for, the Borrower from time to time, including, inter alia, (i) revolving loans in an aggregate committed amount of up to $4.0 million, and (ii) term loans in an aggregate original principal amount of $28.5 million. The First Lien Credit Agreement, along with any other agreements, instruments, notes, guaranties and other documents executed in connection therewith are collectively referred to herein as the "First Lien Credit Documents" and are available upon request from counsel to the Debtors or counsel to the First Lien Agent. All obligations of the Debtors arising under the First Lien Credit Agreement or any other First Lien Credit Document, including all loans, advances, debts, liabilities, principal, interest, fees, charges, expenses and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts, including obligations pursuant to any letters of credit, and all covenants and duties regarding such amounts, owing to the First Lien Agent or First Lien Lenders by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to as the "First Lien Obligations."

(2)     Pursuant to certain Collateral Documents (as defined in the First Lien Credit Agreement) each as reaffirmed or dated as of January 18, 2008 (as amended, restated, supplemented or otherwise modified from time to time, the "First Lien Collateral Documents"), by and among each of the Debtors, the First Lien Agent and any other parties which may be party thereto, each Debtor granted to the First Lien Agent, for the benefit of itself and the First Lien Lenders, to secure such Debtor's obligations under the First Lien Credit Documents, a first priority security interest in and continuing lien on substantially all of such Debtor's assets, including, but not limited to, all of such Debtor's accounts, chattel paper, documents, general intangibles, goods (including, without limitation, inventory, fixtures and equipment), instruments, intellectual property, investment property, certificated and uncertificated securities, letter of credit rights, money, deposit accounts, receivables and receivable records, real property, commercial tort claims, insurance policies, including claims or rights to payment thereunder, liens, guaranties and other rights and privileges pertaining thereto, and a pledge of one hundred percent (100%) of the capital stock of each of its subsidiaries, and all books, ledgers, books of account, records, writings, data bases, information and other property of such Debtor relating to, used or useful in connection with the foregoing, and all proceeds, distributions, products, accessions, rents, issues, returns and profits of or in respect of any of the foregoing, in each case whether then owned or existing or thereafter acquired or arising. All such collateral granted or pledged by the Debtors pursuant to the First Lien Credit Documents shall collectively be referred to herein as the "Prepetition Collateral."

(3)     Pursuant to that certain Senior Subordinated Loan Agreement dated as of January 18, 2008 (as amended, restated, supplemented or otherwise modified from time to time, the "Second Lien Credit Agreement"), by and among the Borrower, as borrower, each of the other Debtors as guarantors, and William Blair Mezzanine Capital Fund II, L.P. ("William Blair"

or the "Second Lien Agent" and, together with the First Lien Agent, the "Prepetition Agents"),

and the lender parties signatory thereto (collectively, the "Second Lien Lenders" and, together

with the First Lien Lenders, the "Prepetition Secured Lenders"), the Second Lien Lenders

extended loans to the Borrower in an aggregate original principal amount of $2.5 million, which

together with certain "PIK Notes" issued pursuant to the Second Lien Credit Agreement, as of

September 1, 2009, have an aggregate outstanding principal amount of no less than $4,072,984,

plus accrued interest, fees and expenses. Pursuant to that certain Amended and Restated

Subordinated Note dated as of January 18, 2008, William Blair extended a term loan to the

Borrower in an aggregate original principal amount of $2.0 million, which as of September 1,

2009 has an aggregate outstanding principal amount of no less than $3,377,410, plus accrued

interest, fees and expenses (the "Blair Note"). The Second Lien Credit Agreement and the Blair

Note along with any agreements, instruments, notes, guaranties and other documents executed in

connection therewith are collectively referred to herein as the "Second Lien Credit Documents"

and are available upon request from counsel to the Debtors or counsel to the Second Lien Agent.

All obligations of the Debtors arising under the Second Lien Credit Documents shall hereinafter

be referred to as the "Second Lien Obligations."

    (4)  Pursuant to certain Second Lien Credit Documents, each as reaffirmed or

dated as of January 18, 2008 (as amended, restated, supplemented or otherwise modified from

time to time, the "Second Lien Collateral Documents"), by and among each of the Debtors, the

Second Lien Agent and any other parties which may be party thereto, each Debtor granted to the

Second Lien Agent, for the benefit of itself and the Second Lien Lenders, to secure such

Debtor's obligations under the Second Lien Credit Documents, a second priority security interest

in and lien on all of such Debtor's right, title and interest in the Prepetition Collateral.

(5)     All First Lien Credit Documents executed and delivered by the Debtors to the First Lien Agent are valid and enforceable by the First Lien Agent and the First Lien Lenders against each of the Debtors. The First Lien Agent duly perfected its liens upon and security interests in the Prepetition Collateral by, among other things, filing financing statements, real estate mortgages and fixture filings and, where necessary, by possession of relevant instruments, certificates, or other property or by control of relevant deposit accounts. All of such financing statements, real estate mortgages and fixture filings were validly executed by authorized representatives of the Debtors. Pursuant to the First Lien Credit Documents, the First Lien Lenders have perfected first priority security interests in and liens on all of the Prepetition Collateral, including the Cash Collateral.

(6)     The liens and security interests of the First Lien Lenders in the Prepetition Collateral, as security for the First Lien Obligations, constitute valid, binding, enforceable and perfected first priority liens and security interests and are not subject to avoidance, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens will be subordinated to the DIP Liens and the Carve-Out (each term as hereinafter defined) in accordance with the provisions of this Order). The Debtors further admit, acknowledge and agree that (i) the First Lien Obligations constitute legal, valid and binding obligations of each of the Debtors, (ii) no offsets, defenses or counterclaims to the First Lien Obligations exist, and (iii) no portion of the First Lien Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens will be subordinated to the DIP Liens and the Carve-Out (each term as hereinafter defined) in accordance with the provisions of this Order). The Debtors irrevocably waive any right to challenge or contest such liens of the First Lien Lenders in the Prepetition Collateral or the validity of the First Lien Obligations.

(7)     The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the First Lien Agent or any First Lien Lender with respect to the First Lien Credit Agreement or any other First Lien Credit Documents, whether arising at law or at equity, including, without limitation, any re-characterization, subordination, avoidance or other debtor claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code.

(8)     As of the Petition Date, the Debtors were truly and justly indebted to the First Lien Lenders pursuant to the First Lien Credit Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $30,061,081 in respect of loans made and letters of credit issued by the First Lien Lenders pursuant to and in accordance with the terms of the First Lien Credit Documents, plus all accrued or hereafter accruing and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the First Lien Credit Documents) now or hereafter due under the First Lien Credit Agreement and the other First Lien Credit Documents (collectively, the "First Lien Secured Debt").

(9)     All Second Lien Credit Documents executed and delivered by the Debtors to the Second Lien Agent are valid and enforceable by the Second Lien Agent and the Second Lien Lenders against each of the Debtors.  The Second Lien Agent duly perfected its liens upon and security interests in the Prepetition Collateral by, among other things, filing financing statements, real estate mortgages and fixture filings and, where necessary, by possession of relevant instruments, certificates, or other property.  All of such financing statements, real estate mortgages and fixture filings were validly executed by authorized representatives of the Debtors. Pursuant to the Second Lien Credit Documents, the Second Lien Lenders have perfected second

priority security interests in and liens on all of the Prepetition Collateral, including the Cash Collateral.

(10)     The liens and security interests of the Second Lien Lenders in the Prepetition Collateral, as security for the Second Lien Obligations, constitute valid, binding, enforceable and perfected second priority liens and security interests and are not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens will be subordinated to the DIP Liens and the Carve-Out (each term as hereinafter defined) in accordance with the provisions of this Order).  The Debtors further admit, acknowledge and agree that (i) the Second Lien Obligations constitute legal, valid and binding obligations of each of the Debtors, (ii) no offsets, defenses or counterclaims to the Second Lien Obligations exist, and (iii) no portion of the Second Lien Obligations is subject to avoidance, disallowance, or reduction pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens will be subordinated to the DIP Liens and the Carve-Out (each term as hereinafter defined) in accordance with the provisions of this Order). The Debtors irrevocably waive any right to challenge or contest such liens of the Second Lien Lenders in the Prepetition Collateral or the validity of the Second Lien Obligations.

(11)     As of the Petition Date, the Debtors were truly and justly indebted to the Second Lien Lenders pursuant to the Second Lien Credit Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $7,450,394 in respect of loans made by the Second Lien Lenders pursuant to and in accordance with the terms of the Second Lien Credit Documents, plus all accrued or hereafter accruing and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Second Lien Credit Documents) now or hereafter due under the Second

Lien Credit Agreement, the Blair Note and the other Second Lien Credit Documents (collectively, the "Second Lien Secured Debt").

E.       The Debtors have an immediate and critical need to obtain post-petition financing under the DIP Facility and to use Cash Collateral in order to, among other things, finance the ordinary costs of their operations, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, and satisfy other working capital and operational needs. The Debtors' access to sufficient working capital and liquidity through the incurrence of post-petition financing under the DIP Facility and the use of Cash Collateral under the terms of this Order is vital to the preservation and maintenance of the going concern value of the Debtors' estates and to the Debtors' successful reorganization, liquidation or orderly sale of their assets. Consequently, without access to the DIP Facility and the continued use of Cash Collateral, to the extent authorized pursuant to this Order, the Debtors and their estates would suffer immediate and irreparable harm.

F.       The use of Cash Collateral alone would be insufficient to meet the Debtors' post-petition liquidity needs. The Debtors are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Agent and the DIP Lenders on terms more favorable than the terms of the DIP Facility. The only source of secured credit available to the Debtors, other than the use of Cash Collateral, is the DIP Facility. The Debtors require both additional financing under the DIP Facility and the continued

use of Cash Collateral under the terms of this Order in order to satisfy their post-petition liquidity needs.

G.    The DIP Agent and the DIP Lenders have indicated a willingness to provide the Debtors with certain financing commitments, but solely on the terms and conditions set forth in this Order and in the DIP Credit Documents. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lenders pursuant to the terms of this Order and the DIP Credit Documents represents the best financing presently available to the Debtors. The Debtors hereby waive the right to seek the use of Cash Collateral other than on terms satisfactory to the Required DIP Lenders (as defined in the DIP Credit Agreement as "Required Lenders," and hereinafter referred to as the "Required DIP Lenders").

H.    The First Lien Agent and the First Lien Lenders are prepared to consent to: (i) the imposition of certain liens under section 364(d)(1) of the Bankruptcy Code in favor of the DIP Agent, for the benefit of itself and the DIP Lenders, but solely on the terms and conditions set forth in this Order and in the DIP Credit Documents, which liens will prime the Primed Liens (as hereinafter defined), and (ii) the Debtors' use of the Prepetition Collateral (including the Cash Collateral), provided that the Court authorizes the Debtors, pursuant to sections 361, 363 and 364 of the Bankruptcy Code, to grant to the First Lien Agent, for the benefit of itself and the First Lien Lenders, as adequate protection for the Adequate Protection Obligations (as hereinafter defined), but subject to the Carve-Out, (a) replacement security interests in and liens and real estate mortgages upon (collectively, the "Adequate Protection Liens") all of the DIP Collateral (as hereinafter defined) (including, upon entry of the Final Order and subject to the terms thereof, liens on proceeds of Avoidance Actions (as hereinafter defined)), and (b) a superpriority administrative expense claim under section 507(b) of the

-11-

Bankruptcy Code (the "Adequate Protection Priority Claim"), which Adequate Protection Priority Claim shall be subordinate in priority only to the superpriority claim under section 364(c)(1) of the Bankruptcy Code in favor of the DIP Lenders. The Adequate Protection Liens and Adequate Protection Priority Claim shall secure the payment of the First Lien Obligations in an amount equal to any diminution in the value of the First Lien Lenders' interests in the Prepetition Collateral from and after the Petition Date (the amount of such diminution, the "Adequate Protection Obligations") including, without limitation, any such diminution resulting from the following: (i) the use by the Debtors of the Prepetition Collateral, including, without limitation, the Cash Collateral, and any cash constituting proceeds of such collateral (ii) the imposition of the DIP Liens, which will prime the Primed Liens, and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code. The Adequate Protection Liens shall be junior to the DIP Liens, junior to the Non-Primed Liens (as hereinafter defined) with respect to the collateral encumbered by any such Non-Primed Liens to the extent such Non-Primed Liens are senior to the liens in favor of the First Lien Agent securing the First Lien Obligations, and senior to the prepetition liens in favor of the Second Lien Agent, for the benefit of itself and the Second Lien Lenders, and to any adequate protection replacement liens granted to the Second Lien Agent, for the benefit of itself and the Second Lien Lenders. As additional adequate protection, the First Lien Agent and the First Lien Lenders shall be entitled to the payment of all of its fees and expenses, including the fees and expenses of legal counsel and other professionals retained by the First Lien Agent and the First Lien Lenders, in accordance with the terms and conditions of the First Lien Credit Documents.

I.     The consent of the First Lien Agent and the First Lien Lenders to the priming of their liens by the DIP Liens (as hereinafter defined) is limited to the DIP Facility presently before the Court, with GE Capital as DIP Agent and certain of the First Lien Lenders

as DIP Lenders, and shall not extend to any other post-petition financing or to any modified version of this DIP Facility with any party other than GE Capital as DIP Agent. Furthermore, the consent of the First Lien Agent and the First Lien Lenders to the priming of their liens by the DIP Liens does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the First Lien Agent and the First Lien Lenders that their interests in the Prepetition Collateral are adequately protected pursuant to this Order or otherwise.

J. The security interests and liens granted pursuant to this Order to the DIP Agent, for the benefit of itself and the DIP Lenders, are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtors' estates, and/or (ii) the holders of such valid, perfected, prepetition security interests and liens have consented to the security interests and priming liens granted pursuant to this Order to the DIP Agent for the benefit of itself and the DIP Lenders.

K. Pursuant to Section 7 of that certain Subordination Agreement dated as of January 18, 2008 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Intercreditor Agreement") by and among the First Lien Agent, Second Lien Agent and the Second Lien Lenders, the Second Lien Agent and the Second Lien Lenders have agreed: (i) to subordinate their liens in the Prepetition Collateral to the DIP Liens and the Adequate Protection Liens, (ii) that they will raise no objection to the Debtors entering into the financing arrangements contemplated by this Order and the DIP Credit Documents, and to the Debtors' continued use of Cash Collateral on the terms and conditions set forth in this Order, and (iii) that it will not request adequate protection or any other relief in connection with the Debtors' entry into the DIP Facility or their continued use of Cash Collateral, except as expressly agreed

to by the First Lien Agent or to the extent permitted under Section 7.2(b) of the Prepetition Intercreditor Agreement.

L.     Good cause has been shown for immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  In particular, the authorization granted herein for the Debtors to execute the DIP Credit Documents, to continue using Cash Collateral, and to obtain interim financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Entry of this Order is in the best interest of the Debtors, their estates and creditors.  The terms of the DIP Credit Documents (including the Debtors' continued use of Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.     The Debtors, the DIP Agent, the First Lien Agent have negotiated the terms and conditions of the DIP Credit Documents (including the Debtors' continued use of Cash Collateral) and this Order in good faith and at arm's-length, and any credit extended and loans made to the Debtors pursuant to this Order shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

N.     Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is approved on the terms and conditions set forth in this Order.  This Order shall become effective immediately upon its entry.  To the extent the terms of the DIP Credit Documents differ in any material respect from the terms of this Order, this Order shall control.

2.     The Debtors are hereby authorized to enter into and be bound by the DIP Credit Documents, including the DIP Credit Agreement, and such additional documents, instruments, and agreements as may be reasonably required by the DIP Agent to implement the terms or effectuate the purposes of this Order.  The Borrower is hereby authorized to borrow money and obtain letters of credit under the DIP Credit Agreement, and the Guarantors are hereby authorized to unconditionally guaranty such borrowings and the Borrower's obligations with respect to such letters of credit, in accordance with the terms of this Order, the DIP Credit Agreement, and the other DIP Credit Documents.

3.     The Debtors are hereby authorized to use the Cash Collateral and to incur DIP Loans (as hereinafter defined) solely in accordance with the Budget (as hereinafter defined) and the covenants, availability formulae, and other terms and conditions set forth in the DIP Credit Agreement and this Order.  The Debtors shall use the DIP Loans as a source of incremental financing solely to the extent the Cash Collateral available to the Debtors is insufficient to satisfy the Debtors' liquidity needs.  For the avoidance of doubt, the Debtors shall use all available Cash Collateral before incurring any DIP Loans.

4.     The Debtors are hereby authorized and directed to pay on demand all interest, fees, expenses and other amounts payable under the terms of the DIP Credit Agreement, including, without limitation, all out-of-pocket costs and expenses of the DIP Agent and DIP Lenders in accordance with the terms of the DIP Credit Agreement (including, without limitation, the pre- and post-petition fees and disbursements of legal counsel, financial advisors and third-party appraisers and consultants advising the DIP Agent and/or DIP Lenders).  None of such costs, fees, and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that each of the DIP Agent and DIP Lenders

shall submit copies of its professional fee invoices to counsel for the Debtors, counsel for the U.S. Trustee, and counsel for the official committee of unsecured creditors (the "Committee"), if one is appointed in these Chapter 11 Cases, at least five (5) days in advance of payment by the Debtors of any such invoice. Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver by any of the DIP Agent or the DIP Lenders of the attorney-client privilege or of any benefits of the attorney work product doctrine. The U.S. Trustee and the Committee may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted by the DIP Agent or the DIP Lenders, provided that any such objection shall be forever waived and barred unless (i) it is filed with the Court and served on counsel for the DIP Agent and DIP Lenders no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice and (ii) it describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis for the objection to each such item or category of fees, costs and expenses. Any hearing on an objection to payment of any fees, costs and expenses of the DIP Agent or the DIP Lenders set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items of categories of the fees, costs and expenses which are the subject of such objection. In addition, the Debtors are hereby authorized and directed to indemnify the DIP Agent and the DIP Lenders against any liability arising in connection with the DIP Credit Documents to the extent set forth in the DIP Credit Documents. All such unpaid fees, expenses and indemnities of the DIP Agent and DIP Lenders shall constitute DIP Obligations (as hereinafter defined) and shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Order and the DIP Credit Documents.

5.     Upon execution and delivery of the DIP Credit Documents, the DIP Credit Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms thereof. No obligation, payment, transfer or grant of security under the DIP Credit Documents or this Order shall be stayed, restrained, voided, voidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.     All loans and letters of credit made to or for the benefit of the Debtors on or after the Petition Date under the DIP Credit Documents (collectively, the "DIP Loans"), all interest thereon, and all fees, costs, expenses, indemnification obligations and other liabilities owing by the Debtors to the DIP Agent and the DIP Lenders under the DIP Credit Documents and this Order shall hereinafter be referred to as the "DIP Obligations." The DIP Loans shall: (i) be evidenced by the books and records of the DIP Agent or the DIP Lenders; (ii) bear interest payable at the rates set forth in the DIP Credit Agreement; (iii) be secured in the manner specified in Paragraph 10 below; (iv) be payable in accordance with the terms of the DIP Credit Documents; and (v) comply with and otherwise be governed by the terms set forth herein and in the DIP Credit Documents.

7.     Subject to the terms and conditions set forth in this Order and in the DIP Credit Documents, the Debtors may use the DIP Loans and the Cash Collateral to: (i) pay interest, fees and expenses associated with the DIP Facility, as provided in the DIP Credit Documents, (ii) make the adequate protection payments required under this Order, and (iii) fund general corporate and working capital requirements of the Debtors (including, without limitation, the Debtors' ongoing administrative expenses in the Chapter 11 Cases as may be approved by the Court), in each case in accordance with the Budget and the terms of the DIP Credit Documents. The aggregate amount of the DIP Loans available under the DIP Credit Agreement

shall not exceed $3,309,470.12 (the "Maximum Amount"), provided, however, that (i) from and after the entry of this Order and prior to the entry of the Final Order, the Maximum Amount shall be limited to $2,500,000; and (ii) the Debtors shall use all available Cash Collateral before incurring any DIP Loans; provided further, however, that the aggregate amount of the DIP Loans that will be available to the Debtors from time to time prior to the Termination Date (as hereinafter defined) shall be subject to the borrowing availability limitations set forth in Paragraph 8 below and the DIP Credit Agreement.

8.     Attached hereto as Exhibit A is a 13-week budget (the "Budget") which reflects on a line-item basis the Debtors' anticipated cash receipts and disbursements on a weekly basis starting on the Petition Date. As more fully described in the DIP Credit Agreement, on any day on or after the Petition Date, (a) the aggregate outstanding principal amount of all Revolving Loans and Letter of Credit Obligations under the DIP Facility shall not exceed the Maximum Amount, and (b) the aggregate principal balance of all Revolving Loans and L/C Reimbursement Obligations for all Letters of Credit shall not exceed (i) $400,000 plus (ii) the amount of the deficiency specified in the Budget in the line item "ENDING BALANCE – BOOK CASH" for the week in which such day occurs minus (iii) such reserves as may be imposed by the Required DIP Lenders, in their reasonable credit judgment, in an amount not to exceed the maximum amount of the Carve-Out. The Debtors shall be required to immediately repay the Revolving Loans to the extent the conditions set forth in the immediately preceding sentence are not satisfied, and failure by the Debtors to make any such repayment shall constitute an Event of Default (as defined in the DIP Credit Agreement). The Budget shall not be modified or otherwise amended without the prior consent of the Required DIP Lenders. In addition to the Budget variance reports referenced above, the Debtors shall provide, on a weekly basis, (i) a rolling 13-week cash flow forecast and (ii) a monitoring report including, among other items, a

reconciliation of actual cash flow to such forecasts. The Debtors shall also provide, on an as requested basis, all other information reasonably requested by the DIP Agent or the Required DIP Lenders and all other reports required to be provided under the First Lien Credit Agreement.

9.      The obligation of the DIP Lenders to make loans under the DIP Facility (the "DIP Commitments") shall terminate, all DIP Obligations will be due and payable and the Debtors' authority to use Cash Collateral will terminate on the earliest to occur of (such earliest date being, the "Termination Date"): (i) sixty (60) days after the Petition Date; (ii) thirty (30) days after entry of this Order if the Final Order, in form and substance acceptable to the Required DIP Lenders and the Requisite First Lien Lenders shall not have been entered by the Bankruptcy Court on or before such date; (iii) the effective date of a plan of reorganization or a plan of liquidation supported by the Required DIP Lenders and the Requisite First Lien Lenders; (iv) the closing of a sale of substantially all assets of the Debtors that is consented to by the Required DIP Lenders and the Requisite First Lien Lenders; (v) the date of filing of a plan of reorganization or a plan of liquidation by any party other than the Debtors or the DIP Agent, or if the Debtors seek or support confirmation of a plan of reorganization or plan of liquidation that is not acceptable to the Required DIP Lenders and the Requisite First Lien Lenders; (vi) the date on which the DIP Agent, pursuant to Section 7.2 of the DIP Credit Agreement, (A) declares all or any portion of the DIP Commitments terminated and/or (B) rescinds permission, by written notice delivered by hand-delivery, overnight mail, facsimile, or email to counsel for the Debtors and counsel for the Committee, for the Debtors to use Cash Collateral and terminates the obligation of the DIP Agent to make Cash Collateral Disbursements and (vii) the permanent reduction of the DIP Commitments to zero.

10.      As security for the full and timely payment of the DIP Obligations, the DIP Agent, for the benefit of the DIP Agent and the DIP Lenders, is hereby granted, pursuant to

sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, enforceable, unavoidable, and fully perfected security interests in and liens and real estate mortgages (collectively, the "DIP Liens") upon all prepetition and post-petition real and personal property of the Debtors, whether now existing or hereafter acquired or arising, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real property interests, intellectual property, general intangibles, investment property, supporting obligations, letter of credit rights, commercial tort claims, causes of action, one hundred percent (100%) of the capital stock of each Debtor's direct and indirect subsidiaries, all intercompany notes held by the Debtors, and all substitutions, accessions, distributions and proceeds of the foregoing, including insurance proceeds (and, upon entry of the Final Order and subject to the terms thereof, the proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code (the "Avoidance Actions")) (collectively, the "DIP Collateral").

11.     The DIP Liens, the Adequate Protection Liens and the Junior Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Lenders, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, real estate mortgages, filings with the U.S. Patent and Trademark Office, filings with the U.S. Copyright Office, or other documents. All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except the Primed Liens, the Non-Primed Liens, and other permitted liens and encumbrances as provided in the DIP Credit Agreement. If the DIP Agent hereafter

requests that the Debtors execute and deliver to the DIP Agent financing statements, security agreements, collateral assignments, real estate mortgages, or other instruments and documents considered by the DIP Agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtors are hereby authorized and directed to execute and deliver such financing statements, security agreements, real estate mortgages, collateral assignments, instruments, and documents, and the DIP Agent is hereby authorized to file or record such documents in its discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. The automatic stay is hereby modified to the extent necessary to permit or effectuate the terms of this Order and the Final Order and the documentation of the DIP Facility, including, without limitation, to permit the creation and perfection of the DIP Liens.

12. Subject to the Carve-Out, the DIP Liens: (a) shall constitute first priority security interests in and liens on all DIP Collateral that is not otherwise subject to any valid, perfected, enforceable and non-avoidable lien in existence as of the Petition Date, pursuant to section 364(c)(2) of the Bankruptcy Code; (b) pursuant to section 364(d)(1) of the Bankruptcy Code, shall be senior to and prime (i) those liens on the DIP Collateral in favor of the First Lien Agent and the First Lien Lenders with respect to the Prepetition Collateral and First Lien Obligations, (ii) those liens on the DIP Collateral in favor of the Second Lien Agent and the Second Lien Lenders with respect to the Prepetition Collateral and Second Lien Obligations, (iii) any consensual liens on the Prepetition Collateral in existence as of the Petition Date that are held by parties receiving proper notice of the Motion and that are junior in priority to the liens in favor of the First Lien Agent, (iv) any and all valid, perfected, enforceable and non-avoidable tax or other non-consensual liens in existence as of the Petition Date and properly perfected prior to the Petition Date that are junior in priority to the liens in favor of the First Lien Agent, and (v) all

Adequate Protection Liens and Junior Adequate Protection Liens (as hereinafter defined) and all other adequate protection replacement liens granted under this Order, the Final Order or otherwise ((i) through (v) above, collectively, the "Primed Liens"); and (c) pursuant to section 364(c)(3) of the Bankruptcy Code, shall be immediately junior in priority to any and all valid, perfected, enforceable and non-avoidable liens (other than the Primed Liens) on assets of the Debtors in existence as of the Petition Date and properly perfected prior to the Petition Date (collectively, the "Non-Primed Liens").

13.     In addition to the priming liens and security interests granted to the DIP Agent pursuant to this Order, for the benefit of the DIP Agent and the DIP Lenders, pursuant to section 364(c)(1) of the Bankruptcy Code all DIP Obligations (including, without limitation, all DIP Loans) shall constitute allowed superpriority administrative expense claims (the "Superpriority Claims") with priority, subject to the Carve-Out, over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations and Junior Adequate Protection Obligations (as hereinafter defined)), and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b) or, to the extent permitted by applicable law, 726 or any other provisions of the Bankruptcy Code, which Superpriority Claims shall, subject to the Carve-Out, be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, including, subject to the entry of the Final Order, the proceeds of Avoidance Actions.

14.     To the extent DIP Facility proceeds and/or unencumbered funds are not available to timely pay in full the administrative expenses of the Debtors, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the Junior Adequate Protection Liens (as hereinafter defined) and the Primed Liens in and upon the DIP Collateral and the Prepetition

Collateral and the proceeds thereof shall be subject to: (i) the allowance and payment of reasonable professional fees and expenses as may be allowed by the court, in an amount not to exceed the amount specified in the Budget, (a) that have been incurred but not yet paid as of the date on which the DIP Lenders have elected to exercise their remedies with respect to such Event of Default (the "Remedy Exercise Date"), and (b) that are incurred after such Remedy Exercise Date by the Debtors, the Committee, and any other statutory committee(s) appointed in the Chapter 11 Cases as follows: (w) fees and expenses of Proskauer Rose LLP as counsel to the Debtors in an amount not to exceed $200,000, (x) fees and expenses of Qorval LLC as consultants to the Debtors in an amount not to exceed $150,000, (y) fees and expenses of Cole, Schotz, Meisel, Forman & Leonard, P.A. as local counsel to the Debtors in an amount not to exceed $50,000, and (z) fees and expenses of any statutory committee in an amount not to exceed $100,000, in each case net of any unused retainers for such professional fees and expenses, and (ii) the payment of fees payable pursuant to 28 U.S.C. § 1930 (the "Carve-Out"). In the event the Carve-Out obligations are unpaid and there is insufficient availability, or inability to draw, under the DIP Facility to satisfy the Carve-Out obligations, the DIP Lenders, the Prepetition Lenders, and the DIP Agent and the Prepetition Agent agree that: (A) the Prepetition Lenders' bid for the purchase of certain of the Debtors' assets filed concurrently herewith shall provide for the assumption of the Carve-Out obligations (including budgeted and unpaid professional fees), and the payment thereof on the schedule set forth in the Budget; or (B) in the event that these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, any proceeds of Prepetition Collateral and/or DIP Collateral otherwise payable to the DIP Lenders, the Prepetition Lenders, and the DIP Agent and/or the Prepetition Agent shall first be used by the Prepetition Lenders, and the DIP Agent and/or the Prepetition Agent to pay and satisfy the Carve-Out obligations (including budgeted and unpaid professional fees). Estate

professional fees and expenses may be paid only to the extent they are allowed by the Bankruptcy Court, or as otherwise permitted pursuant to the compensation procedures approved by the Bankruptcy Court. The Required DIP Lenders shall have the right to create a reserve against DIP Availability in the maximum amount of the Carve-Out.

15.    No portion of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with (i) asserting any claims, causes of action or challenges against the Prepetition Agents, the Prepetition Secured Lenders, the DIP Agent, or the DIP Lenders, including, without limitation, any action challenging or raising any defenses to the First Lien Obligations, the Second Lien Obligations, or the DIP Obligations, or (ii) challenging the validity, perfection, priority, characterization, extent or enforceability of the DIP Facility, the First Lien Credit Agreement, the Second Lien Credit Agreement, the liens on or security interest in the DIP Collateral, or the liens on or security interests in the Prepetition Collateral securing the First Lien Obligations or the Second Lien Obligations; provided, however, that no more than $30,000 of the proceeds of the DIP Facility or the DIP Collateral may be used by the Committee to investigate the prepetition liens and claims of the Prepetition Agents and the Prepetition Secured Lenders.

16.    The Debtors are authorized and directed to establish and maintain the cash management system described in Section 4.11 of the DIP Credit Agreement (the "Cash Management System"). The Cash Management System and all accounts established in connection therewith shall be used for the purposes and on the terms and conditions set forth in the DIP Credit Agreement and the other DIP Credit Documents. The Debtors are further authorized and directed to enter into any additional agreements providing for the establishment

of lock boxes, blocked accounts, or similar arrangements in favor of the DIP Agent for purposes of facilitating cash collections from the Debtors in accordance with the terms of the DIP Credit Agreement.

17.     The First Lien Agent and the First Lien Lenders shall immediately share dominion and control with the DIP Agent with respect to each depository account of the Debtors or other third party that was subject to a deposit account control agreement with the First Lien Agent as of the Petition Date, and such deposit account control agreements shall hereafter be additionally enforceable by the DIP Agent against, and binding upon, each depository institution party thereto until the DIP Obligations have been paid in full in cash and the DIP Credit Agreement shall have been terminated, after which such deposit account control agreements shall again be solely enforceable by the First Lien Agent.

18.     Upon entry of the Final Order, all landlord agreements to which the First Lien Agent is a party shall be deemed amended to include the DIP Agent as a beneficiary thereunder, and such agreements shall thereafter be additionally enforceable by the DIP Agent against, and binding upon, each landlord party thereto until the DIP Obligations shall have been paid in full in cash and the DIP Credit Agreement shall have been terminated, after which such agreements shall again be solely enforceable by the First Lien Agent.

19.     As adequate protection for the payment of the Adequate Protection Obligations and subject to the Carve-Out, the First Lien Agent, for the benefit of the First Lien Lenders, shall be granted the Adequate Protection Liens (as defined in Paragraph H above) and the Adequate Protection Priority Claim (as defined in Paragraph H above). The Adequate Protection Liens shall be junior in priority to the DIP Liens, junior to the Non-Primed Liens with respect to the collateral encumbered by any such Non-Primed Liens to the extent such Non-Primed Liens were senior to the liens of the First Lien Agent securing the First Lien Obligations

-25-

as of the Petition Date, and senior to any other liens, including, without limitation, to the prepetition liens in favor of the Second Lien Agent, for the benefit of itself and the Second Lien Lenders, and to the Junior Adequate Protection Liens (as hereinafter defined). The Adequate Protection Priority Claim shall be junior in priority to the Superpriority Claims but senior in priority to the Junior Adequate Protection Claim (as hereinafter defined) and any other claims under section 507(b) of the Bankruptcy Code. As additional adequate protection, (i) the First Lien Agent and First Lien Lenders shall be entitled to the current cash payment of all of their respective fees and expenses in accordance with the terms of the First Lien Credit Agreement, including, but not limited to, the fees and expenses of legal counsel and other professionals retained by the First Lien Agent and the First Lien Lenders; (ii) except for the DIP Facility and the DIP Liens granted to the DIP Agent and the DIP Lenders pursuant to this Order, the Debtors shall be prohibited from incurring additional indebtedness with claim status with priority over the DIP Obligations, the Adequate Protection Obligations, or the First Lien Obligations or from granting liens equal to or senior in priority to the liens securing the DIP Obligations, the Adequate Protection Obligations, or the First Lien Obligations. The fees and expenses of legal counsel and other professionals retained by the First Lien Agent and First Lien Lenders shall not be subject to Court approval or U.S. Trustee guidelines, and no recipient of any payment by the Debtors of such fees and expenses shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the First Lien Agent and the First Lien Lenders shall submit copies of its professional fee invoices to counsel for the Debtors, counsel for the U.S. Trustee, and counsel for the Committee at least five (5) days in advance of payment by the Debtors of any such invoice. Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of

such invoices shall not constitute any waiver by the First Lien Agent or the First Lien Lenders of the attorney-client privilege or of any benefits of the attorney work product doctrine. The U.S. Trustee and the Committee may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted by the First Lien Agent or the First Lien Lenders, provided that any such objection shall be forever waived and barred unless (i) it is filed with the Court and served on counsel for the First Lien Agent and the First Lien Lenders no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice and (ii) it describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis for the objection to each such item or category of fees, costs and expenses. Any hearing on an objection to payment of any fees, costs and expenses of the First Lien Agent or the First Lien Lenders set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items of categories of the fees, costs and expenses which are the subject of such objection. All cash payments of interest and fees payable to the First Lien Agent and the First Lien Lenders pursuant to this Order shall be provisional in nature, subject to final allowance in accordance with section 506(b) of the Bankruptcy Code; provided, that if and to the extent any such payment(s) is challenged by a party in interest under section 506(b) of the Bankruptcy Code and ultimately not allowed under such provision, such payment(s) may be recharacterized as a payment of principal on the First Lien Obligations. Nothing herein shall preclude the First Lien Agent or the First Lien Lenders from seeking additional adequate protection of their interests in the Prepetition Collateral, including without limitation the payment of all prepetition and post-petition interest accruing under the First Lien Credit Agreement in accordance with the terms thereof, or from seeking the termination of the Debtors' use of Cash Collateral upon the occurrence of an Event of Default. Furthermore, nothing herein shall be construed as an acknowledgment or stipulation by the First

Lien Agent or the First Lien Lenders that their interests in the Prepetition Collateral are adequately protected pursuant to this Order or otherwise.

20.    As adequate protection for any post-petition diminution in the value of the Second Lien Agent's interest in the Prepetition Collateral, if any, and subject to the Carve-Out, the Second Lien Agent, on behalf of the Second Lien Lenders, is hereby granted: (a) pursuant to sections 361(a), 363(c) and 364(d)(1) of the Bankruptcy Code, replacement liens and security interests (the "Junior Adequate Protection Liens") in all of the DIP Collateral (including, upon entry of the Final Order and subject to the terms thereof, liens on proceeds of Avoidance Actions), and (b) an administrative priority claim under section 507(b) of the Bankruptcy Code (the "Junior Adequate Protection Priority Claim"). The Junior Adequate Protection Liens and Junior Adequate Protection Priority Claim shall secure the payment of the Second Lien Obligations in an amount equal to any diminution in the value of the Second Lien Lenders' interests in the Prepetition Collateral, if any, from and after the Petition Date (the "Junior Adequate Protection Obligations"). The Junior Adequate Protection Liens shall be junior in priority to the DIP Liens, junior to the Non-Primed Liens to the extent that the Non-Primed Liens are senior to the Second Lien Agent's prepetition liens, junior to the liens of the First Lien Agent securing the First Lien Obligations, and junior to the Adequate Protection Liens. The Junior Adequate Protection Priority Claim shall be junior in priority to the Superpriority Claims and to the Adequate Protection Priority Claim.

21.    In determining the relative priorities and rights of the Prepetition Agents (including, without limitation, the relative priorities and rights of the Prepetition Agents with respect to the replacement liens and administrative expense claims granted, or amounts payable, by the Debtors under this Order), pursuant to section 510 of the Bankruptcy Code, such priorities and rights shall continue to be governed by the Prepetition Intercreditor Agreement, and nothing

in this Order or the DIP Credit Documents shall impair, diminish or otherwise affect the terms of the Prepetition Intercreditor Agreement.

22.     Subject to the entry of the Final Order and the terms thereof, the Debtors irrevocably waive and shall not assert any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Secured Lenders upon, the DIP Collateral or the Prepetition Collateral. In no event shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the DIP Collateral.

23.     Except for the Carve-Out, no claim or lien having a priority superior to or pari passu with those granted pursuant to this Order to the DIP Agent and the DIP Lenders or to the Prepetition Agents and the Prepetition Secured Lenders, respectively, shall be granted or allowed while any portion of the DIP Facility (or any refinancing thereof), the DIP Commitments thereunder, the DIP Obligations, or the Adequate Protection Obligations remain outstanding. Except as expressly permitted by the DIP Credit Agreement, the Debtors shall not grant real estate mortgages, security interests, or liens in the DIP Collateral to any parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

24.     The provisions of this Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Secured Lenders, the Debtors, and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for or on behalf of any Debtor's estate or with respect to its property).

25.     The provisions of this Order and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of reorganization in any of the

Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; or (iii) dismissing any of the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Order shall maintain their priority as provided by this Order until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the terms of the DIP Credit Agreement.

26.     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations, Adequate Protection Obligations or Junior Adequate Protection Obligations incurred prior to the actual receipt by the DIP Agent, the First Lien Agent, or the Second Lien Agent, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Credit Documents with respect to any DIP Obligations, Adequate Protection Obligations, or Junior Adequate Protection Obligations. Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations, Adequate Protection Obligations or Junior Adequate Protection Obligations by the Debtors prior to the actual receipt by the DIP Agent, the First Lien Agent, or the Second Lien Agent, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Order, and the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Secured Lenders shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Order, and the DIP Credit Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations, Adequate Protection Obligations and Junior Adequate Protection Obligations by the Debtors.

27.     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, upon the occurrence and during the continuation of any Event of Default, all rights and remedies provided for in the DIP Credit Documents, and to take any or all of the following actions without further order of or application to this Court: (a) immediately terminate the Debtors' use of Cash Collateral and cease to make any DIP Loans to the Debtors; (b) immediately declare all DIP Obligations to be immediately due and payable; (c) immediately terminate the DIP Commitments; (d) immediately set off any and all amounts in accounts maintained by the Debtors with the DIP Agent or any of the DIP Lenders against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of any of the DIP Lenders for application towards the DIP Obligations; and (e) take any other actions or exercise any other rights or remedies permitted under this Order, the DIP Credit Documents or applicable law to effect the repayment of the DIP Obligations; provided, however, that the DIP Agent shall provide three (3) business days written notice (by facsimile, telecopy or otherwise) to counsel to the Debtors, counsel to the Committee, and counsel to the U.S. Trustee prior to exercising any setoff or other lien enforcement rights or remedies with respect to the DIP Collateral. The rights and remedies of the DIP Agent and the DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent and the DIP Lenders may have under the DIP Credit Documents or otherwise.

28.     The Debtors are hereby authorized, without further order of this Court to enter into agreements with the DIP Agent, at the direction of the Required DIP Lenders, providing for any non-material modifications to the Budget or the DIP Credit Agreement, or of any other modifications to the DIP Credit Agreement necessary to conform the DIP Credit Agreement to this Order; provided, however, that notice of any material modification or

amendment to the Budget or the DIP Credit Agreement shall be provided to counsel to the Committee and counsel to the U.S. Trustee, each of whom shall have three (3) business days from the date of such notice within which to object in writing to such modification or amendment. If the Committee or the U.S. Trustee timely objects to any material modification or amendment to the Budget or the DIP Credit Agreement, such modification or amendment shall only be permitted pursuant to an order of this Court.

29.    The stipulations and admissions contained in this Order, including, without limitation, in recital Paragraphs D(1) through D(11) of this Order, shall be binding on all parties in interest, including, without limitation, the Committee, unless, and solely to the extent that, the Committee, or another party in interest with standing and requisite authority, has timely filed an adversary proceeding (subject to the limitations set forth in Paragraph 15 hereof) challenging the amount, validity, or enforceability of the First Lien Obligations or the Second Lien Obligations, or the perfection or priority of the First Lien Lenders' or the Second Lien Lenders' liens on and security interests in the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action on behalf of the Debtors' estates against (i) the First Lien Agent or the First Lien Lenders relating to the First Lien Obligations or (ii) the Second Lien Agent or the Second Lien Lenders relating to the Second Lien Obligations, in each case no later than the earlier of ~~forty-~~ Seventy-five (~~45~~75) days from the Petition Date and ~~thirty (30)~~ sixty (60) days from the date of the appointment of such Committee. [as part of the Final Order, the First Lien Agent will be seeking to have these periods] If no such adversary proceeding is timely commenced as of such date then, without further order of the Court, (i) the claims, liens and reduced to forty-five (45) security interests of the Prepetition Agents and the Prepetition Secured Lenders shall, without ~~days and~~ thirty (30) further order of the Court, be deemed to be finally allowed for all purposes in these Chapter 11 days, respectively). Cases and any subsequent chapter 7 cases and shall not be subject to challenge by any party in interest as to validity, priority or otherwise, and (ii) without further order of the Court, the

Debtors and their estates shall be deemed to have released any and all claims or causes of action against the Prepetition Agents and the Prepetition Secured Lenders with respect to the First Lien Credit Documents, the Second Lien Credit Documents, or any related transactions. Notwithstanding anything to the contrary herein, if any such adversary proceeding is timely commenced, (i) the stipulations contained in Paragraphs D(1) through D(11) hereof shall nonetheless remain binding on all parties in interest and preclusive (as provided in the second sentence of this Paragraph 29) except to the extent that such stipulations are expressly challenged in such adversary proceeding, and (ii) any portion of the First Lien Obligations, Second Lien Obligations and the liens and security interests of the Prepetition Agents and Prepetition Secured Lenders that is not specifically challenged in such adversary proceeding shall, without further order of the Court, be deemed to be finally allowed for all purposes in these Chapter 11 Cases and any subsequent chapter 7 cases.

30.     The First Lien Agent shall be authorized (but not required) to file a master proof of claim against the Debtors (the "Master Proof of Claim") on behalf of itself and the First Lien Lenders on account of their prepetition claims arising under the First Lien Credit Documents, and the First Lien Agent shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019. The Second Lien Agent shall also be authorized (but not required) to file a Master Proof of Claim on behalf of itself and the Second Lien Lenders on account of their prepetition claims arising under the Second Lien Credit Documents, and the Second Lien Agent also shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019. If the First Lien Agent or the Second Lien Agent so files a Master Proof of Claim against the Debtors, the First Lien Agent and each First Lien Lender, or the Second Lien Agent and each Second Lien Lenders, as the case may be, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its

claims against the Debtors arising under the First Lien Credit Documents or the Second Lien Credit Documents, and the claims of the First Lien Agent and each First Lien Lender, or the Second Lien Agent and each Second Lien Lenders, as the case may be (and their respective successors and assigns) named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in each Chapter 11 Case in the amount set forth opposite each name listed in the Master Proof of Claim. The First Lien Agent and the Second Lien Agent shall further be authorized to amend its respective Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of such claims. The provisions set forth in this Paragraph 30 and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, the rights of the First Lien Agent, each First Lien Lender, the Second Lien Agent, and each Second Lien Lender as the holder of a claim against the Debtors under applicable law, and (ii) the numerosity requirements set forth in section 1126 of the Bankruptcy Code.

31. The Final Hearing is scheduled for September 29, 2009 at 4:00 p.m. (prevailing Eastern Time) before this Court. The Debtors shall promptly serve a notice of entry of this Order and the Final Hearing, together with a copy of this Order, by first class mail, postage prepaid, upon: (i) the Office of the United States Trustee for this District (the "U.S. Trustee"); (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) counsel to the DIP Agent; (iv) counsel to the First Lien Agent; (v) counsel to the Second Lien Agent; (vi) all other parties with liens of record on assets of the Debtors as of the Petition Date; (vii) all financial institutions at which the Debtors maintain deposit accounts; (viii) the landlords

for all non-residential real properties occupied by the Debtors as of the Petition Date; and (ix) all other parties requesting notice pursuant to Bankruptcy Rule 2002. The notice of the entry of this Order and the Final Hearing shall state that objections to the entry of the Final Order shall be filed with the United States Bankruptcy Court for the District of Delaware by no later than 5:00 p.m. (prevailing Eastern Time) on _____, 2009 (the "Objection Deadline"), which objections shall be served so that the same are actually received before the Objection Deadline by (a) Proskauer Rose LLP, Three First National Plaza, 70 West Madison, Suite 3800, Chicago IL 60602-4342, Attn: Peter J. Young; and (iii) Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Norman L. Pernick, counsel to the Debtors; (b) Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603, Attn: Larry J. Nyhan and William Evanoff, and Richards Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins, counsel to the DIP Agent and the First Lien Agent; (c) Reinhart Boerner Van Deuren s.c., 1000 North Water Street, Suite 1700, Milwaukee, WI 53202, Attn: Albert S. Orr, counsel to the Second Lien Agent; (d) counsel to the Committee; and (e) counsel to the U.S. Trustee. Any objections by creditors or other parties-in-interest to any provisions of this Order shall be deemed waived unless timely filed and served in accordance with this Paragraph 31.

Dated: _September 3_ 2009.

_____
UNITED STATES BANKRUPTCY JUDGE