# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Alternative Distribution Systems, Inc., et al.,[1] | Case No. 09-13099 (PJW) |
| Debtors. | Jointly Administered |

### ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT; (II) AUTHORIZING AND APPROVING THE SALE OF CERTAIN ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (III) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

This matter having come before the Court on the motion (the "Sale Motion") of

Alternative Distribution Systems, Inc., and certain of its affiliated companies, each a debtor and

debtor-in-possession in the above captioned cases (the "Debtors"), for entry of this order ("Sale

Order") (i) approving that certain asset purchase agreement (the "APA")[2] presented by the

Debtors and the Buyer (as defined below) at the Sale Hearing on October 14, 2009 (the "Sale

Hearing"), (ii) authorizing the sale (the "Sale") of substantially all of the Debtor's assets as set

forth in the APA (the "Purchased Assets")[3] free and clear of liens, claims, encumbrances, and

interests; and (iii) authorizing assumption and assignment of certain executory contracts and

unexpired leases ((i) – (iii), collectively, the "Sale Transaction") and (iv) granting other related

relief; the Court having entered an order on September 16, 2009 (Docket No. 74, the "Bidding

Procedures Order") approving certain bid procedures (the "Bidding Procedures"); and the Buyer

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alternative Distribution Systems, Inc. (2412); May Logistics Services, Inc. (4970); and ADS Logistics, LLC (0782).

[2] Capitalized terms used but not defined in this Sale Order shall have the meanings assigned to such terms in the APA.

[3] Any personal property of the Debtors remaining on the premises subject to a rejected lease of non-residential real property shall be deemed to be abandoned by the Debtors pursuant to section 554 of the Bankruptcy Code and shall not be included in the Sale as Purchased Assets. Counterparties to such rejected leases of nonresidential real property may take reasonable actions to remove, and dispose of, any such abandoned property.

having been determined by the Debtors to have submitted the highest and best bid; and the Sale

Hearing having been held; and all interested parties having been afforded an adequate

opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and

considered: (i) the Sale Motion, (ii) the objections thereto, if any, and (iii) the arguments of

counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that

the relief requested in the Sale Motion and approval of the sale of the Purchased Assets identified

in the APA and assumption and assignment of the Assumed Contracts is in the best interests of

the Debtors, their estates, creditors, and other parties in interest; and upon the record of the Sale

Hearing and these cases; and after due deliberation thereon; and good cause appearing therefor, it

is hereby

## FOUND AND DETERMINED AS FOLLOWS:[4]

A. This Court has jurisdiction over the Sale Motion and the transactions

contemplated by the APA pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and the Sale Motion is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought in the Sale Motion are sections

105(a), 363, 365, 1123 and 1146(c) of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007

and 9014 of the Bankruptcy Rules.

C. This Sale Order constitutes a final and appealable order within the meaning of

28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court

expressly finds that there is no just reason for delay in the implementation of this Sale Order, and

---

[4] This Sale Order constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052. All findings of fact and conclusions of law announced by the Court at the Sale Hearing shall be deemed additional findings of fact and conclusions of law in this matter and are incorporated herein.

expressly directs entry of judgment as set forth herein. This Sale Order shall be effective immediately upon entry.

**Sound Business Purpose**

D. The Debtors seek to sell and assign all of their rights, title and interest in certain assets, as identified in the attached APA as the "Purchased Assets," to Alternative Distribution Systems Holding Company, Inc. (the "Buyer"), which is the assignee of General Electric Capital Corporation, Global Leveraged Capital Credit Opportunity Fund I, and Regiment Capital Special Situations Fund III, L.P. (collectively, the "Prepetition Senior Lenders"). The Debtors have demonstrated both (i) good, sufficient and sound business purpose and justification for the Sale and (ii) compelling circumstances for consummating the Sale pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, the value of the Purchased Assets would be harmed by any delay of the Sale. Time is of the essence in approving the APA and consummating the Sale. Entry of an order approving the APA and all the provisions thereof is a necessary condition precedent to the Buyer consummating the transactions contemplated by the APA.

**Highest and Best Offer for the Purchased Assets**

E. On September 16, 2009, this Court entered the Bidding Procedures Order approving certain notice procedures for the sale of the Purchased Assets. The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the assets of the Debtors. Since the filing of the Sale Motion on September 2, 2009, the Debtors, in compliance with the Bidding Procedures, have afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets. As described more fully below, the Debtors conducted a marketing process in

accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.

F. The bid embodied by the APA served as the "stalking horse bid" for the proposed sale of the Purchased Assets. The Prepetition Senior Lenders are secured creditors of the Debtors, holding valid Interests (as defined below) in, on and against the Debtors, their estates and property of the estates, arising in connection with a credit agreement dated as of January 18, 2008, and related loan, security, pledge and guaranty agreements. The Prepetition Senior Lenders hold an allowed secured claim in the aggregate principal amount of no less than $30,061,081, plus such additional amounts to the extent allowed under the order approving the Debtors' post-petition financing facility (the "Allowed Claim"), and pursuant to the Bidding Procedures were authorized to credit bid any or all of such Allowed Claim at the Auction. The Prepetition Senior Lenders are deemed to have assigned their rights to receive the Purchased Assets to the Buyer.

G. In accordance with the Bidding Procedures Order, the APA was deemed a Qualified Bid (as defined in the Bidding Procedures Order) and was eligible to participate at the Auction. Ultimately, no competing bids were received by the deadline established in the Bidding Procedures, and the Auction was not held. Thus, despite the provision of notice to all parties in interest of the proposed Sale and the significant marketing efforts described below, the Debtors were unable to obtain a higher or better offer for the purchase of the Purchased Assets than the offer embodied in the APA.

H. Based on the foregoing, the Debtors believe, and the Court finds and determines, that the proposed Sale (i) is the product of an exhaustive and sufficient marketing process under the circumstances of these cases; (ii) represents the highest and best offer for the Purchased Assets; and (iii) provides fair and reasonable consideration, including the credit bid

portion of the considersation, for the Purchased Assets. The Court further finds and determines that (i) the Sale will provide a greater recovery for the Debtors' creditors than would be provided by any other available alternative; (ii) no other party has offered to purchase the Purchased Assets for greater economic value to the Debtors or their estates; (iii) the Debtors' determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment; and (iv) the Purchase Price constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession thereof, and the District of Columbia.

### The Debtors' Extensive Marketing Efforts

I. Prior to instituting the Chapter 11 Cases, the Debtors engaged the investment banking firm, EVE Partners, LLC ("EVE"), to conduct a marketing process in order to determine whether any potential buyers existed who might be interested in purchasing from the Debtors some, or all, of the leases and operations related to its "Roll & Hold Division," which provides ISO 9001:2000 certified warehousing of steel coil and other metals products, as well as services to coordinate just-in-time distribution to the Debtors' customers. Although this process resulted in a handful of interested responses, none of the potential buyers identified by EVE were ultimately prepared to consummate a sale on terms acceptable to the Debtors. At the Debtors' request, EVE later expanded its marketing process in order to determine if there were any potential buyers who might be interested in purchasing substantially all of the Debtors' assets on terms more favorable to the Debtors than those set forth by the Buyer in its initial bid.

J. Subsequent to the commencement date of the Debtors' chapter 11 cases, the Debtors and EVE continued to conduct a broad marketing process by, among other activities, preparing an information memorandum regarding the Debtors' business and assets and soliciting interest from a broad list of potential purchasers. On or about September 16, 2009, EVE began

to formally canvass the market once again. EVE contacted over fifty prospective purchasers, split roughly equally between strategic buyers and financial buyers. Of those parties, thirteen executed confidentiality agreements and engaged in further due diligence. However, none of the potential bidders submitted a formal bid. Pursuant to the Bidding Procedures, the deadline to submit a competing bid expired on October 8, 2009. Because there were no competing Qualified Bids (other than the APA) received, the Auction was cancelled.

K. Accordingly, the Court finds that the Purchased Assets have been thoroughly marketed by the Debtors and EVE in a commercially reasonable manner. The marketing process conducted by EVE was designed to, and did, maximize the value of the Assets and was appropriate under the circumstances.

### Best Interests of Creditors

L. The Buyer submitted the highest and best offer for the Purchased Assets. The Debtors have demonstrated that the Sale of the Purchased Assets to the Buyer pursuant to the terms of the APA is in the best interests of the Debtors, their creditors, and their bankruptcy estates.

### No Fraudulent Transfer

M. The Purchase Price for the Purchased Assets constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia ((i) - (iii) collectively, "Value"), for the Purchased Assets.

N. The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state,

territory, possession or the District of Columbia. Neither the Buyer nor the Debtors are entering into the transactions contemplated by this APA fraudulently. The Buyer is a third-party purchaser unrelated to the Debtor. No common identity of incorporators, directors, or stockholders exists between the Buyer and the Debtors. The Buyer is not holding itself out to the public as a continuation of the Debtors.

## Good Faith

O. The Buyer is not an "insider" of the Debtors, as that term is defined in section 101 of the Bankruptcy Code. The APA and the transactions contemplated thereby were negotiated, proposed and entered into by the Debtors and the Buyer in good faith and from arm's length bargaining positions, without collusion or fraud. The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to the protections afforded thereby, and the Buyer otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Buyer complied with the provisions in the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; and (iv) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed. Neither the Debtors nor the Buyer have engaged in any conduct, by action or inaction, that would cause or permit the APA or the transactions contemplated thereby to be avoided pursuant to section 363(n) of the Bankruptcy Code. The Buyer reasonably relied upon the information contained in the due diligence materials made available to the Buyer by the Debtors.

## Notice of the Sale

P.   As evidenced by the affidavits of service dated and filed on September 24, 2009 (Docket Nos. 98 and 99) and September 29, 2009 (Docket No. 109) and the affidavit of publication dated September 23, 2009 and filed on October 9, 2009 (Docket No. 158), the Debtors caused: (A) a copy of the Notice of Auction and Sale Hearing, dated September 18, 2009 (Docket No. 80, the "Notice of Auction and Sale Hearing") and a copy of this Bidding Procedures Order to be sent by first-class mail postage prepaid, to the following: (i) the Office of the United States Trustee; (ii) counsel for the Buyer; (iii) counsel to the administrative agent for the Debtors' prepetition First Lien Lenders; (iv) counsel to the agent for the Debtors' postpetition secured lenders; (v) counsel to the collateral agent for the Debtors' prepetition Second Lien Lenders; (vi) all taxing authorities and other governmental agencies having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (vii) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (viii) all Persons known or reasonably believed to have asserted any lien, claim, encumbrance, right of first refusal, or other Interest (as defined below) in or upon any of the Purchased Assets; (ix) the non-Debtor parties to the Executory Contracts and Unexpired Leases and any parties who are known to claim interests therein; (x) all Persons known or reasonably believed to have expressed an interest in acquiring all or substantially all of the Purchased Assets within the last six months; (xi) the Attorneys General in the States where the Purchased Assets are located; (xii) the United States Environmental Protection Agency; and (xiii) any applicable state environmental agency; (B) the Notice of Auction and Sale Hearing to be served on all known creditors of the Debtors; and (C) the Notice of Auction and Sale Hearing to be published in The Wall Street Journal (national edition) on September 22, 2009.

Q. In accordance with the provisions of the Bidding Procedures Order, the Debtors have served notice upon the non-Debtor parties to the Assumed Contracts (as defined below): (i) that the Debtors seek to assume, assign and/or transfer certain executory contracts and unexpired leases as provided for in the APA on the Closing Date; and (ii) of the relevant proposed Cure Amounts (as defined below). The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Amounts for the Assumed Contracts. Each of the non-Debtor parties to the Assumed Contracts has had an opportunity to object to the Cure Amounts set forth in the notice.

R. As evidenced by the affidavits of service filed with the Court, the Court finds that the Debtors have provided proper, timely, adequate and sufficient notice of the Sale Motion, the proposed Sale, the APA, and the Sale Hearing to all parties in interest in these chapter 11 cases, that such notice was good, sufficient, and appropriate under the circumstances of these cases, and that no other or further notice is or shall be required. The Court further finds that a reasonable opportunity to object or to be heard in connection with the sale of the Purchased Assets has been afforded to all parties in interest.

### Section 363(f) Is Satisfied

S. The Debtors may sell the Purchased Assets to the Buyer free and clear of all Interests because one or more of the standards set forth in section 363(f) of the Bankruptcy Code have been satisfied. Those holders of Interests who did not object, or who withdrew their objections, to the Sale or to the Sale Motion are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankrutpcy Code. Those holders of Interests who objected to the Sale but whose objections were either withdrawn by the objecting party or overruled by the Court fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code. Certain of such holders of Interests are adequately protected because their Interests, if any, will attach to the

proceeds of the Sale ultimately attributable to the Purchased Assets against which they hold an Interest, in the same order of priority and with the same validity, force and effect, that such Interests had prior to the Sale, subject to any defenses available to the Debtors.

T. If the Sale of the Purchased Assets to the Buyer was not free and clear of all Interests or if the Buyer could be liable for any of such Interests, the Buyer would not be prepared to enter into the APA and would not consummate the transactions contemplated thereby, to the detriment of the Debtors, their estates and creditors. Except as specifically provided in the APA or this Sale Order, the Buyer shall not assume or become liable for any Interests relating to the Purchased Assets.

## The Assets Are To Be Sold Free and Clear of Successor Liability

U. The Buyer should not, and shall not, be liable for any of the Debtors' liabilities or for any claims, rights, or causes of action arising from or related to the Purchased Assets, except for and solely to the extent that such liabilities are expressly assumed pursuant to the APA (the "Assumed Liabilities"). Pursuant to section 363(f) of the Bankruptcy Code, the Buyer is entitled to know that the Purchased Assets are not infected with latent claims that will be asserted against the Buyer after the Sale has been completed. Thus, the Buyer shall not be liable as a successor under any theory of successor liability for any Interests that arise from or relate to the Purchased Assets. Thus, other than with respect to the Assumed Liabilities, the Buyer shall not be liable as a successor under any theory of successor liability for any Interests that arise from or relate to the Purchased Assets.

V. As of the Closing Date, the transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets and will vest the Buyer with all right, title, and interest of the Debtors in and to the Purchased Assets, free and clear of all liens (statutory or otherwise, including any lien as defined in Section 101(37) of the Bankruptcy

Code), pledges, mortgages, deeds of trust, security interests, claims, reclamation claims, charges,

hypothecations, assignments, licenses, conditional sales or other retention agreements, liabilities,

beneficial interests, options, rights of first or last refusal, options to purchase, priority or other

security agreements or preferential arrangements of any kind or nature, rights of rescission

(statutory or otherwise), causes of action, covenants, restrictions, easements, rights of setoff,

defects in title or other encumbrances of any kind, including any claim as defined in Section

101(5) of the Bankruptcy Code, whether arising prior to or subsequent to the commencement of

the Bankruptcy Case (but not subsequent to the Closing), and whether imposed by agreement,

law, equity or otherwise, including, without limitation, any claims arising under doctrines of

successor liability with respect to any of the Purchased Assets (collectively, the "Interests").

     W. The Buyer does not constitute a successor to the Debtors because: (i) except

as otherwise set forth in the APA, the Buyer is not expressly or impliedly agreeing to assume any

of the Debtors' liabilities; (ii) the transactions contemplated by the APA do not amount to a

consolidation, merger or a de facto merger of the Debtors and any one or more of the Buyer or its

affiliates; (iii) neither the Buyer nor its affiliates are a mere continuation of the Debtors; and (iv)

the transactions contemplated by the APA are not being entered into fraudulently or in order to

escape liability from the Debtors' debts.

### Validity of the Transfer

     X. The Debtors (i) are each entities duly organized or formed, validly existing

and in good standing under the laws of the jurisdiction of its organization or formation; (ii) have

the requisite corporate or limited liability company power and authority to enter into and execute

the APA and any other documents contemplated thereby; and (iii) have taken all actions

necessary to authorize and approve the APA and the consummation by the Debtors of the

transactions contemplated thereby. No consents or approvals, other than those expressly

provided for in the APA, are required for the Debtors to consummate the Sale. The Debtors have all right, title, and interest in and to the Purchased Assets. The transfer of each of the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer of such assets, and such transfer vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets.

## Assumption and/or Assignment

Y. The assumption and assignment of each of the Assumed Contracts (as defined below) to the Buyer in connection with the Sale is based on an appropriate exercise of the Debtors' business judgment. The Assumed Contracts are integrally related to the Purchased Assets, and the APA contemplates such assumptions and/or assignments. Without the assumptions and/or assignments, there would be no Sale Transaction.

Z. Pursuant to Section 365 of the Bankruptcy Code, upon payment of the Cure Amounts (as defined below), the Debtors or Buyer, as applicable, shall have: (i) cured and/or provided adequate assurance of cure of any monetary default existing prior to the Petition Date under any of the Assumed Contracts; and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Petition Date under any of the Assumed Contracts.

## Waiver of Bankruptcy Rule 6004(h) Stay

AA. Cause exists to waive the ten (10) day stay of effectiveness of this Sale Order under Bankruptcy Rule 6004(h). To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, and to reduce the amount of postpetition debtor-in-possession financing borne by the Debtors, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the APA. Time is of the essence in consummating the Sale.

## Additional Findings

BB.  The consummation of the Sale is properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), (f) and (m), and 365 of the Bankruptcy Code, and the Debtors have complied with all applicable requirements of such provisions.  The terms of the APA are fair and reasonable in all respects.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

## General Provisions

1.  The relief requested in the Sale Motion is GRANTED and approved on the terms set forth herein, and the Sale Transaction is approved as set forth herein.  The terms of this Sale Order are non-severable and mutually dependent.

2.  All objections, if any, to the entry of this Sale Order or the relief provided herein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled on the merits, except as expressly provided herein.

## Approval of the APA

3.  The APA and all ancillary documents, all transactions contemplated therein (including the Sale Transaction), and all of the terms and conditions thereof, are hereby authorized and approved in all respects.

4.  The Debtors' entry into the APA is authorized and approved pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized and directed to take any and all actions necessary or appropriate to (i) enter into and perform their obligations under and comply with the terms of the APA and to consummate the Sale Transaction pursuant to and in accordance with the terms of the APA and this Sale Order; (ii) close the Sale as contemplated in the APA and this Sale Order; and (iii) execute and deliver, perform under,

consummate, and implement the APA, in substantially the form attached hereto as Exhibit A, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale, including any other ancillary documents as may be reasonably necessary or appropriate to the performance of the Debtors' obligations under the APA, without further order of this Court.

5. The consideration provided by the Buyer for the Purchased Assets under the APA, including the credit bid portion of the consideration, is fair and reasonable and shall be deemed for all purposes to constitute Value under the Bankruptcy Code or any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under section 363(n), or any other provision of the Bankruptcy Code.

6. The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

7. The terms and provisions of this Sale Order and the APA shall be binding in all respects upon (i) the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors (whether known or unknown); (ii) any holders of Interests against or on all or any portion of the Purchased Assets, the Buyer and all successors and assigns of the Buyer; and (iii) any trustees subsequently appointed in the Debtors' chapter 11 cases or upon a conversion of the Debtors' cases to chapter 7. This Sale Order and the APA shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer, all parties in interest, and their respective successors and assigns. The APA shall not be subject to rejection or avoidance and nothing

contained in any chapter 11 plan confirmed in these bankruptcy cases or in any Order confirming such chapter 11 plan shall conflict with or derogate from the provisions of the APA or this Sale Order. To the extent of any conflict between the APA or this Sale Order and any filed plan of reorganization or liquidation or Order, the terms of this Sale Order shall control.

### Transfer of the Purchased Assets Free and Clear of Interests

8. Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Purchased Assets to the Buyer in accordance with the terms of the APA. The Debtors shall transfer the Purchased Assets to the Buyer upon consummation of the APA and such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and shall vest the Buyer with good title and all right, title and interest to the Purchased Assets free and clear of all Interests.

9. The Assigned Permits, including, without limitation, all Required Material Permits set forth in Schedule 8.10(b) to the APA, may be transferred to the Buyer without further consent or approval of any Governmental Body or any other Person. Each and every federal, state and local governmental agency or department is hereby directed to honor and implement all transfers or assignments of the Assigned Permits.

10. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Sale of the Purchased Assets to the Buyer shall be, and hereby is, free and clear of any and all Interests, rights and encumbrances whatsoever, except as may otherwise be set forth explicitly in the APA or this Sale Order.

11. Except as expressly permitted by the APA or this Sale Order, all persons and entities holding or asserting Interests arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Purchased Assets to the Buyer, are hereby forever barred,

estopped, and permanently enjoined from asserting such Interests against the Buyer or any of

their property (including the Purchased Assets). All persons and entities are hereby forever

prohibited and enjoined from taking any action that would adversely affect or interfere with the

ability of the Debtors to sell and transfer the Purchased Assets to the Buyer in accordance with

the terms of the APA and this Sale Order.

12. This Sale Order is and shall be effective as a determination that, upon transfer

of the Purchased Assets to the Buyer, all Interests in, against or relating to any of the Purchased

Assets conveyed to the Buyer have been and hereby are terminated and declared to be

unconditionally released, discharged, and terminated. This Sale Order is and shall be binding

upon and shall govern the acts of all persons and entities, including, without limitation, all filing

agents, filing officers, title agents, title companies, insurance companies, recorders of mortgages,

recorders of deeds, registrars of deeds, administrative agencies, governmental departments,

secretaries of state, federal and local officials, and all other persons and entities who may be

required by operation of law, the duties of their office, or contract, to accept, file, register or

otherwise record or release any documents or instruments, or who may be required to report or

insure any title or state of title in or to any of the Purchased Assets. Each of the foregoing

persons and entities is hereby directed to accept for filing any and all of the documents and

instruments necessary and appropriate to consummate the transactions contemplated by the APA.

13. A certified copy of this Sale Order may be filed with the appropriate clerk

and/or recorded with the recorder to act to cancel any of the Interests and other encumbrances of

record.

14. If any person or entity which has filed statements or other documents or

agreements evidencing Interests in all or any portion of the Purchased Assets shall not have

delivered to the Debtors prior to the Closing, in proper form for filing and executed by the

appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Interests which such person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtors and/or Buyer shall be, and hereby are, authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity to document the release of its Interests.

### Assumption and/or Assignment of Contracts and Leases

15. Pursuant to Section 365 of the Bankruptcy Code, the Debtors are authorized to (i) assume and assign to the Buyer the executory contracts and unexpired leases set forth on Schedule 2.2(a)(2) to the APA (the "Assumption and Assignment Schedule") and (ii) cure the same in the cure amounts set forth in the Assumption and Assignment Schedule (the "Cure Amounts"). The contracts and leases referenced in the prior sentence shall be referred to herein, collectively, as the "Assumed Contracts."

16. The Assumed Contracts, consistent with the provisions contained herein, shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assumed Contracts (including those of the type described in Section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, and, pursuant to Section 365(k) of the Bankruptcy Code, the Debtors' estate shall be relieved from any further liability with respect to the Assumed Contracts (except as set forth in the APA) after such assignment and sale to Buyer. Any provisions of any lease of real property constituting an Assumed Contract that purports to permit the landlord thereunder to cancel the remaining term of such lease if the Debtors or the Buyer discontinue their use or operation of the leased real property is void and of no force and effect, and shall not be enforceable against the applicable Buyer and any sublessees

thereof, and the landlord under such lease, shall not have the right to cancel or otherwise modify such lease or increase the rent, assert any Claim, or impose any penalty by reason of such discontinuation, the Debtors' or the Buyer's cessation of operations, the assignment of such lease to such Buyer or its assignee, or the interruption of business activities at any of the leased premises.

17.    All defaults or other obligations of the Debtors or the Debtors' estates under the Assumed Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured, upon payment of the Cure Amounts, and the Buyer shall have no liability or obligation arising or accruing under the Assumed Contracts on or prior to the Closing, except as otherwise expressly provided in the APA.  The non-debtor parties to the Assumed Contracts are barred from asserting against the Debtors, the Debtors' estates, Buyer, and their respective successors and assigns, any default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Assumed Contracts arising or incurred prior to the Closing or arising by reason of the Closing, other than the Cure Amounts.

18.    The Buyer and the Debtors have provided adequate assurance of future performance under the Assumed Contracts, and the proposed assumption and/or assignment of the Assumed Contracts satisfies the requirements of the Bankruptcy Code including, *inter alia*, sections 365(b)(1) and (3) and 365(f) to the extent applicable.  Any counterparty to an Assumed Contract that did not object to its proposed Cure Amount or to the proposed assumption and/or assignment of its agreement is hereby deemed to have consented to the proposed Cure Amount and to the assumption and/or assignment contemplated herein.

19. Notwithstanding anything to the contrary contained herein or in the APA, solely with respect to The CIT Group/Equipment Financing, Inc. and CIT Financial LTD. (individually and collectively, "CIT"), to the extent that the Debtors are assuming and assigning any executory contracts or unexpired leases related to CIT (the "CIT Leases"), the Debtors are not transferring their right, title and interest in and to the equipment covered by such CIT Leases, but, rather, the Debtors are transferring their right, title and interest in, to, under and subject to, such CIT Leases. As to CIT, the Debtors will designate, by a supplement filed with the Court, within five days prior to the Closing, those unexpired leases that it is seeking to assume, and the Debtors shall not have the ability to amend or change the supplement absent CIT's consent. To the extent Debtors seek to assume any of the CIT Leases, the corresponding Cure Amount(s) shall be paid to CIT at the Closing. Additionally, the Buyer shall agree to be bound by all obligations under the CIT Leases to pay all amounts owing to CIT that are attributable to all tax liabilities accruing before the Petition Date but not billed to CIT. To the extent that such bills for pre-petition tax liabilities are received by CIT on a going forward basis, the Buyer shall be obligated to pay CIT for the full amount of any such pre-petition obligation.

20. Notwithstanding anything to the contrary (except with respect to CIT) in this Sale Order, the Bidding Procedures Order, the Bidding Procedures or the related notices, the Debtors may designate, by a supplement filed with the Court within two business days prior to the Closing, additional contracts or leases, whether or not previously listed on the Assumption and Assignment Schedule, that it is seeking to reject. If such contracts or leases are so designated, they shall be deemed rejected as of the date of such designation.

## Other Provisions

21. In accordance with Section 2.4 of the APA, the Buyer shall assume the Assumed Liabilities.

22.  Effective upon the Closing Date, all Persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer, its successors and assigns, or the Purchased Assets, with respect to (a) any Interest (other than an Assumed Liability) arising under, out of, in connection with, or in any way relating to the Debtors, the Buyer, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing, or (b) any any successor liability, including, without limitation, the following actions:  (i) commencing or continuing in any manner any action or other proceeding against the Buyer, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, its successors, assets, or properties; (iii) creating, perfecting, or enforcing any Interest against the Buyer, its successors or assigns, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating, or failing or refusing to issue or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with Purchased Assets.

23.  Except as otherwise expressly provided for in this Sale Order or the APA, neither the Buyer nor any of the Debtors' Prepetition Senior Lenders shall have any liability for any obligation of the Debtors arising under or related to any of the Purchased Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the APA, neither the Buyer nor any of the Prepetition Senior Lenders shall be liable for any Interests against the Debtors or relating to any of Purchased Assets, and neither the Buyer nor

any of the Prepetition Senior Lenders shall have any successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, Purchased Assets prior to the Closing Date. The Buyer has agreed to provide substantial consideration to the Debtors under the APA for the benefit of the holders of Interests. The consideration given by the Buyer constitutes valid and valuable consideration for the releases of any potential claims of successor liability against the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Interests against the Debtors or the Purchased Assets.

24. The Debtors and their estates, and their respective successors and assigns, including any chapter 7 trustee or chapter 11 trustee appointed in these chapter 11 cases, hereby waive, release, and forever discharge the Buyer, each of the Buyer's Affiliates and its respective trustees, officers, directors, employees, professionals, and agents (collectively, the "Released Parties") from and against any and all Interests, claims, liabilities, suits, debts, judgments and damages, of any kind whatsoever, whether matured or unmatured, foreseen or unforeseen, discoverable or undiscoverable, contingent or non-contingent, that the Debtors or their estates may have against the Released Parties based on any conduct, acts, or occurrences that arose prior to or as of the Closing Date, except for any claims expressly preserved under the APA.

25. Any amounts that become payable by the Debtors to the Buyer pursuant to the APA (and related agreements executed in connection therewith) as of the Closing Date or thereafter (a) shall constitute allowed administrative expenses of the Debtors' estates under

sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code and (b) shall be paid by the Debtors in the time and manner provided for in such APA.

26. The transactions contemplated by the APA are undertaken by the Debtors and the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code and accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization is duly stayed pending such appeal. The Buyer is a good faith purchaser of the Purchased Assets, within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

27. The consideration provided by the Buyer for the Purchased Assets is fair and reasonable and the Sale thus may not be avoided under section 363(n) of the Bankruptcy Code.

28. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale Transaction.

29. There are no brokers involved in consummating the Sale Transaction and no brokers' commissions are due.

30. The failure to reference any particular provision of the APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

31. The APA and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates, and the Debtors' representatives are hereby authorized to execute such modifications, amendments or supplements.

32. Prior to the Closing Date, the Buyer and the Debtors shall take the following actions (provided that the parties may mutually agree to amend such actions from time to time): (a) prior to the Closing (i) the Debtors shall form a wholly owned subsidiary of the Debtors with a name provided by the Buyer (the "New Subsidiary") and (ii) Buyer shall prepare and deliver, with the assistance and cooperation of the Debtors, a Name Change Petition to the Federal Motor Carrier Safety Administration and/or the United States Department of Transportation (collectively, the "DOT") requesting that (A) the approval of the name change for the applicable Required Material Permits (as set forth on Schedule 8.10(b) to the APA) and (B) the name of the applicable New Subsidiary be reflected in the DOT's records with respect to the applicable Required Material Permit. Upon the granting of the petition, the Buyer shall file a Form MCS 150 with the DOT to reflect the New Subsidiary's name(s) and address(es) with respect to the applicable Required Material Permit. At the Closing, all of the equity interests of the New Subsidiary will be transferred to the Buyer as Purchased Assets (unless the Buyer elects to exclude such Purchased Assets prior to the Closing). For the avoidance of doubt, the New Subsidiary is ADS Logistics Co, LLC d/b/a Area Transportation, and the New Subsidiary is entitled to, and hereby granted, the same rights, benefits, and protections as the Buyer in respect of the Purchased Assets under this Order.

33. Buyer is hereby authorized in connection with consummation of the APA to allocate the Purchased Assets and Assumed Contracts (subject to the terms thereof) among its affiliates, designees, assignees, and/or successors in a manner as it in its discretion deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Purchased Assets or the rights under any Assumed Contract (subject to the terms thereof) to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded

under this Sale Order and the APA, and the Debtors shall cooperate with and take all actions reasonably requested by Buyer to effectuate any of the foregoing.

34. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto and any waivers and consents thereunder, and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, this Sale Order or the APA.

35. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36. To the extent there are any inconsistencies between the terms of this Sale Order and the APA, the terms of this Sale Order shall control. To the extent this Sale Order is inconsistent with any prior Order or pleading with respect to the Sale Motion, the terms of this Sale Order shall control.

37. Each and every federal, state and local government agency, department or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

38. This Sale Order shall be effective immediately upon entry. The Court hereby waives the 10-day stay set forth in Bankruptcy Rules 6004(h) and 6006(d) in order that the transactions described herein may be closed prior to the expiration of such 10-day period.

Dated: _O *c t* / *4* 2009
Wilmington, Delaware

_____
The Honorable Peter J. Walsh
United States Bankruptcy Judge

24